**Elmer THOMPSON and Dorothy Thompson, Appellants,**

v.

**HARCO NATIONAL INSURANCE COMPANY, Appellee.**

No. 05–95–01409–CV.

Court of Appeals of Texas, Dallas.

Sept. 24, 1998.

Bertran T. Bader, Carl A. Generes, Dallas, for Appellants.

Carl A. Generes, Charles T. Frazier, Jr., Michael E. Heygood, Julia F. Pendery, for Appellee.

Before MALONEY, JAMES and MOSELEY, JJ.

**OPINION**

MOSELEY, Justice.

Appellants, Elmer and Dorothy Thompson ("Thompsons"), filed a garnishment action against appellee, Harco National Insurance Company ("Harco"). They claimed they had a final judgment against Harco's insured, John W. Henderson, d/b/a John W. Henderson Trucking Co. ("Henderson"), and that, under the terms of Henderson's insurance policy, Harco was indebted to Henderson for $750,000. Harco answered, asserted a counterclaim for wrongful garnishment, and moved to dissolve the writ under Texas Rule of Civil Procedure 664a.[1] After a hearing on Harco's motion, the trial court entered a final judgment dissolving the writ, dismissing the garnishment suit, and awarding Harco its attorney's fees and costs. The Thompsons appealed.

We hold: (1) the Thompsons waived any procedural error based on Harco's standing under Rule 664a; (2) the Thompsons proved, as a matter of law, that they had a valid, subsisting judgment against Henderson; (3) whether Harco was indebted to Henderson, and the amount of any such indebtedness, was not at issue in the Rule 664a hearing, and any findings relating to that issue were premature and irrelevant; (4) there is no evidence the Thompsons wrongfully filed their garnishment action; and (5) the trial court's award of attorney's fees and costs was premature. For these and the other reasons set forth herein, we reverse the judgment of the trial court, render judgment that Harco take nothing by way of its wrongful garnishment counterclaim, and remand the remainder of the case for further proceedings consistent with this opinion.

**I. ANCILLARY LITIGATION**

The garnishment proceeding before us is ancillary to a personal injury suit between the Thompsons, Henderson, and others. Because the actions of the parties to that suit affect the outcome of this appeal, we review those actions in some detail. (Except as noted, the record of that personal

---

1. All textual references to rules are to the Texas Rules of Civil Procedure, unless otherwise noted.

injury suit was before the trial court in the garnishment proceeding and is before us on the appeal.)

## A. Personal Injury Suit

In 1991, the Thompsons filed a personal injury suit against Henderson, Daniel E. Penrod, and others. The suit arose out of an auto accident between the Thompsons' vehicle and a truck. The Thompsons alleged that the truck was owned, operated, or leased by Henderson.

None of the defendants in the personal injury suit filed an answer. The Thompsons obtained an interlocutory default judgment against all defendants except Henderson and Penrod. On March 22, 1993, the Thompsons obtained a default judgment against all defendants, including Henderson, jointly and severally for $974,-739.93, plus prejudgment and post-judgment interest.

## B. Motion for New Trial

On April 22, 1993, *thirty-one days* after the trial court rendered the default judgment, Henderson and the Thompsons filed a motion entitled "Agreed Motion for New Trial." Despite this title and a certificate of conference stating that the Thompsons were "not opposed" to the motion, in actuality the motion was a joint motion. It stated that Henderson and the Thompsons "jointly move" to set aside the default judgment rendered against Henderson, contained a joint prayer for relief, and was signed by counsel for Henderson and the Thompsons. The motion stated that it was timely filed, and incorporated the affidavit of Henderson's attorney, Rickman; this affidavit was attached as an exhibit to the motion.

On May 13, 1993, Henderson filed an unsworn motion entitled "Supplemental Motion for New Trial." This motion, filed without the Thompsons' involvement, stated that the Thompsons had withdrawn their agreement to the original motion. Like the original motion, the supplemental motion stated that it was timely filed, ref-

erencing the April 22, 1993 motion for new trial. The supplemental motion stated that a "new trial should be granted on either of the legal or equitable grounds set forth below."

As legal grounds for granting a new trial, the supplemental motion alleged that a statement of facts (now "reporter's record") was not made of the default judgment hearing. As equitable grounds for granting a new trial, Henderson alleged the requirements enunciated in *Craddock v. Sunshine Bus Lines.*[2] The supplemental motion was accompanied by sworn affidavits ("1993 affidavits") from Henderson and from Dave Leary, Harco's adjuster responsible for overseeing the Thompsons' claim against Henderson. These affidavits, both dated May 11, 1993, described the circumstances surrounding Henderson's failure to file an answer, the entry of the default judgment, and the filing of the original motion for new trial. They stated that Henderson's failure to file an answer was caused by mistaken beliefs and was not intentional or due to conscious indifference. (The contents of the 1993 affidavits will be discussed in more detail herein.)

On May 28, 1993, the trial court heard Henderson's motion. That same day, it entered an order voiding the default judgment as to Henderson and granting him a new trial. The trial court also granted a motion to withdraw filed by the Thompsons' attorneys.

## C. Thompsons' 1995 Motion

The Thompsons retained new counsel, and the personal injury suit continued. In May 1995, shortly before the personal injury suit was scheduled for trial, the Thompsons filed a pleading entitled "Motion to Declare Void Order on Motion for New Trial Signed May 28, 1993" ("1995 motion"). The 1995 motion contended that, because a motion for new trial was not filed within thirty days of the default judg-

---

2. 134 Tex. 388, 133 S.W.2d 124 (1939).

ment (March 22, 1993), the trial court's plenary power over the personal injury suit expired on April 21, 1993. Therefore, the April 22, 1993 motion for new trial was untimely, the order granting that motion was void, and the default judgment was final. The 1995 motion is the first pleading filed by *any* of the parties to the personal injury suit that recognized that the original 1993 motion for new trial was filed thirty-one days after the trial court had entered the default judgment.

On May 11, 1995, Henderson filed a response to the 1995 motion. In that response, Henderson's attorney explicitly argued, for the first time, that Rule 306a applied to extend the trial court's plenary jurisdiction beyond the date the motion for new trial was filed. Therefore, according to Henderson, the original motion for new trial was timely and extended the trial court's plenary power over the judgment beyond May 28, 1993, the date the trial court granted the motion for new trial. Along with his response, Henderson filed additional affidavits by Henderson and Leary ("1995 affidavits"). The trial court heard and denied the Thompsons' 1995 motion, and a subsequent motion to reconsider filed by the Thompsons.

### D. Take-nothing Judgment in Favor of Henderson

According to Harco's brief and the trial court's docket sheet in the personal injury case, the Thompsons and Henderson subsequently went to trial on the liability portion of the personal injury suit. The parties agreed to dismiss the jury. After hearing evidence, the trial court granted Henderson's motion for judgment. On September 18, 1995, the trial court signed a take-nothing judgment against the Thompsons. The Thompsons did not appeal this judgment.

## II. GARNISHMENT PROCEEDING

A week after the Thompsons filed the 1995 motion, but before that motion was decided, the Thompsons filed a separate garnishment action against Harco, Henderson's insurer. *This is the case before us on appeal.* Because the Thompsons raise some procedural issues regarding the garnishment, we review the law applicable to garnishment actions before we recount the pertinent facts of this case.

### A. Garnishment Law

Garnishment is a proceeding in which the property, money, or credits of a debtor that are in the possession of another—the garnishee—are applied to the payment of the garnishor's debt.[3] The garnishor may enforce, against the garnishee, any rights the debtor could have enforced had he sued the garnishee directly.[4] The garnishor, however, cannot acquire any greater rights against the garnishee than the debtor, himself, possesses.[5]

We emphasize that garnishment is purely a statutory remedy, and the statutory provisions are strictly construed.[6] Although the interpretative commentary to the Texas Constitution mentions that garnishment owes its origins to English common law, in the United States the right is entirely regulated by statute.[7] The Texas Supreme Court has long held there is no right to garnishment absent statute:

> The process of garnishment is an inquisitorial proceeding, given to ascertain

---

3. *See Bank One, Tex., N.A. v. Sunbelt Sav., F.S.B.,* 824 S.W.2d 557, 558 (Tex.1992).

4. *See Beggs v. Fite,* 130 Tex. 46, 52, 106 S.W.2d 1039, 1042 (1937).

5. *See Phoenix Ins. Co. v. Willis,* 70 Tex. 12, 17, 6 S.W. 825, 830 (1888).

6. *See Walnut Equip. Leasing Co. v. J–V Dirt & Loam,* 907 S.W.2d 912, 915 (Tex.App.—Austin 1995, writ denied); *see also Varner v. Koons,* 888 S.W.2d 511, 513 (Tex.App.—El Paso 1994, orig. proceeding); *Owen Elec. Supply, Inc. v. Brite Day Constr., Inc.,* 821 S.W.2d 283, 286 (Tex.App.—Houston [1st Dist.] 1991, writ denied); *Hobson & Assocs., Inc. v. First Print, Inc.,* 798 S.W.2d 617, 619–20 (Tex. App.—Amarillo 1990, no writ).

7. *See* TEX. CONST. art. XVI, § 28 interp. commentary (Vernon 1993).

these facts, so that the effects of the original defendant might be reached and subjected to the payment of his just debts. *The act giving this remedy* is not entitled to, nor has it ever received, a liberal construction in favor of the party resorting to the remedy.[8]

### 1. Obtaining a Writ of Garnishment

■ A garnishor may obtain a writ of garnishment if he has a valid subsisting final judgment and makes an affidavit that, within his knowledge, the judgment debtor does not possess property in Texas subject to execution sufficient to satisfy the judgment.[9] For purposes of a garnishment proceeding, a judgment is final upon signing, unless a supersedeas bond is approved and filed.[10]

If the garnishee answers and admits being indebted to the defendant, the trial court shall render a judgment against the garnishee for the lesser of the amount of the garnishee's indebtedness to the defendant or the defendant's indebtedness to the garnishor.[11] If the garnishee answers and denies being indebted to the judgment defendant, the trial court shall discharge him unless the garnishor or the defendant disputes the garnishee's answer by filing a controverting affidavit.[12] If the garnishee's answer is controverted, then "an issue

shall be formed under the direction of the court and tried as in other cases."[13]

### 2. Dissolving a Writ of Garnishment Under Rule 664a

The rules provide a summary procedure to dissolve or modify a writ of garnishment. Under Rule 664a, the *"defendant"* whose property has been garnished, *"or any intervening party* who claims an interest in [the] property or account," may move to vacate, dissolve, or modify the writ.[14] This motion must be heard "promptly, after reasonable notice to the plaintiff (which may be less than three days), and the issue shall be determined not later than ten days after the motion is filed."[15] The trial court may decide a Rule 664a motion either on uncontroverted affidavits or on evidence received at the hearing.[16]

■ After a Rule 664a hearing, the writ of garnishment "shall be dissolved unless, at such hearing, the plaintiff shall prove the grounds relied upon for its issuance."[17] In the context of a postjudgment garnishment proceeding, this means the garnishor must prove (a) it has a valid, subsisting judgment and (b) that within the garnishor's knowledge, the judgment debtor does not possess property in the state subject to execution sufficient to satisfy the judgment.[18]

---

8. *Jemison v. Scarborough,* 56 Tex. 358, 361 (1882) (emphasis added); *see also Gause v. Cone,* 73 Tex. 239, 241, 11 S.W. 162, 163 (1889) ("We think the propositions that the law is to be strictly construed and that the extent of the *garnishee's liability is measured and limited by the express provisions of statutory law are correct."*) (emphasis added).

9. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 63.001(3) (Vernon 1986).

10. *See* TEX.R. CIV. P. 657; *see also Anderson v. Lykes,* 761 S.W.2d 831, 833 (Tex.App.—Dallas 1988, orig. proceeding).

11. *See* TEX.R. CIV. P. 668.

12. *See* TEX.R. CIV. P. 666, 673.

13. TEX.R. CIV. P. 674; *see Willis,* 70 Tex. at 16, 6 S.W. at 829 (indicating that the facts plead-

ed in the controverting answer should put the garnishee on notice of the issue or issues to be tried).

14. TEX R. CIV. P. 664a (emphasis added).

15. *Id.*

16. *See id.*

17. *Id.*

18. *See Swiderski v. Victoria Bank & Trust Co.,* 706 S.W.2d 676, 679 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.) (valid, subsisting judgment); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 63.001(3) (Vernon 1986); *Huie–Clark Joint Venture v. American States Ins. Co.,* 629 S.W.2d 109, 111 (Tex.App.—Dallas 1981, writ ref'd n.r.e.) (insufficient property within the state).

■ Conversely, a Rule 664a motion does *not* require the garnishor to prove that the garnishee is indebted to the debtor.[19] Neither does the garnishor have to prove as a *matter of fact* that the debtor's assets within the State of Texas are insufficient to satisfy the debt.[20]

### B. Present Garnishment Action

In the present case, the Thompsons alleged they had a valid, subsisting judgment against Henderson (specifically, the March 22, 1993 default judgment); that this judgment was unpaid; that Harco was indebted to Henderson; and that, based on all the facts known to them, Henderson did not have sufficient property in Texas subject to execution to satisfy the judgment. This application was sworn to by Elmer Thompson.

In its answer, Harco denied (among other things) that it was indebted to Henderson and that the Thompsons had a valid, subsisting judgment. Additionally, Harco asserted a counterclaim for wrongful garnishment. Harco asked the trial court to assess sanctions against the Thompsons' attorneys and enter judgment in its favor for: (1) attorney's fees under Rule 677; (2) actual damages (including attorney's fees); and (3) punitive damages for wrongful garnishment.

The Thompsons controverted Harco's answer by reasserting the details of the default judgment and asserting that Harco was indebted to Henderson, as his insurer, under the terms of Harco's commercial trucking liability policy. The Thompsons also asserted that even if Harco was discharged as garnishee, it was not an innocent stakeholder, and was therefore not entitled to attorney's fees under Rule 677.

### C. Harco's Motion to Dissolve Writ

Harco moved to dissolve the writ. At the hearing on its motion, Harco specifically represented to the court that it was proceeding under Rule 664a. Although the Thompsons had the burden of proof,

Harco's counsel argued first at the hearing. He made clear the *only* issue he was asking the trial court to address was whether the Thompsons had a valid, subsisting judgment against Henderson:

> Your Honor, the key issue in this case is that no order was entered prior to filing a writ of garnishment. They did not have a judgment. Your order signed on May 28th [the order granting new trial] is crystal clear, that default judgment is not enforceable. Now, the plaintiffs have made the argument
>
> ... that they should reinstate the default judgment. And I believe *that is the only issue that should be addressed here in this court today*, Your Honor.... [U]ntil they get an order reinstating the default judgment or if they get an order declaring that your order for [sic] motion for new trial is void, that default judgment is not good.

> \* \* \*

> ... *The only issue is: On May 9th of 1995, was there a judgment that they had against one of our insured?* The answer is clearly: No.

(Emphasis added.) Thus, Harco's counsel characterized the hearing as concerning only one of the issues raised by a typical Rule 664a motion—whether the Thompsons had a judgment against Henderson.

On that same issue, and during the same hearing, Harco's counsel also requested judgment in favor of Harco's wrongful garnishment counterclaim. He argued that if the Thompsons had no valid, subsisting judgment against Henderson, their garnishment action was wrongful as a matter of law. Seeking to hold the Thompsons and their counsel liable under Rule 13, Harco asserted they should be jointly and severally liable for $2,400 in attorney's fees.

The Thompsons asked the trial court, and the trial court agreed, to take judicial

---

19. *See Swiderski,* 706 S.W.2d at 678.

20. *See Black Coral Invs. v. Bank of the Southwest,* 650 S.W.2d 135, 136 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.).

notice of "all papers and filings [in the underlying personal injury suit]." The Thompsons offered two affidavits as evidence, pointing out that the court could determine issues based upon affidavits in a Rule 664a hearing. One affidavit identified and attached the statement of facts of the May 28, 1993 hearing on the motion for new trial. The other identified and attached a copy of the insurance policy that Harco allegedly issued covering Henderson. Harco's counsel objected to the affidavits—not because they were inappropriate—but on grounds that they had not been presented previously and were irrelevant. He reiterated: *"There's only one issue under this motion and that is whether or not there was a judgment at that time."* The trial court overruled the objections and admitted both affidavits into evidence. No other evidence was introduced.

The Thompsons made the same arguments at the Rule 664a hearing that they made in support of the 1995 motion in the personal injury action. They contended that because Henderson did not file a motion for new trial within thirty days of the March 22, 1993 default judgment, the trial court's plenary power over the case expired on April 21, 1993. Therefore, the motion for new trial was untimely, the default judgment was final, and the May 28, 1993 order granting a new trial was void.

### D. Order to Dissolve Writ

After deciding that the writ had been wrongfully issued, the trial court entered an order dissolving the writ, dismissing Harco, and awarding Harco court costs and $2,400 in attorney's fees. This order constitutes a final judgment in the garnishment action.[21]

In response to the Thompsons' requests, the trial court subsequently entered findings of fact and conclusions of law in support of its judgment. In summary, the trial court found that: (1) Harco was not indebted to Henderson or in the possession of any of Henderson's effects on the specified dates (May 9, 1995; May 11, 1995; and June 5, 1995) and did not know of anyone who was; (2) the Thompsons did not have a final judgment against Henderson or Harco on the specified dates; (3) the Thompsons wrongfully filed the application for writ of garnishment against Harco; and (4) Harco had expended $2,400. in "costs and reasonable attorney's fees" and was entitled to recover them under Rule 677. The trial court declined to enter additional findings of fact and conclusions of law in response to a request from the Thompsons.

The Thompsons appealed, asserting twelve points of error before this Court. They contend that the trial court erred in entering the judgment because, among other things: (1) Harco did not have standing to seek relief under Rule 664a; (2) there was no evidence to support the trial court's finding that the Thompsons did not have a valid, final judgment against Henderson, and, in fact, the Thompsons conclusively proved they had such a judgment; (3) the trial court erred in dissolving the writ and dismissing the action; (4) the evidence was legally and factually insufficient to support the trial court's finding that the Thompsons wrongfully filed the garnishment action; and (5) the trial court erred in awarding Harco attorney's fees and costs.

### III. APPELLATE STANDARD OF REVIEW

A trial court's findings of fact have the same force and dignity as a jury verdict.[22] As such, we consider whether the evidence is sufficient to support findings of fact under the same standards we use to review the sufficiency of evidence supporting jury findings.[23] That is, we consider only

---

21. *See Partee v. Phelps,* 840 S.W.2d 512, 514 (Tex.App.—Dallas 1992, no writ).

22. *See City of Clute v. City of Lake Jackson,* 559 S.W.2d 391, 395 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.).

23. *See Aerospatiale Helicopter Corp. v. Univer-*

the evidence and inferences that tend to support a finding and disregard all evidence and inferences to the contrary.[24] If more than a scintilla of evidence supports it, we uphold the finding.[25] The evidence supporting a finding amounts to more than a scintilla if reasonable minds could differ in their conclusions.[26] But evidence equally susceptible of two opposite inferences is no more than a scintilla of evidence and cannot support a judgment.[27]

When we decide a legal sufficiency point of error that attempts to overcome an adverse fact finding as a matter of law, we first consider only the evidence and inferences tending to support the finding, disregarding all evidence and inferences to the contrary. If there is no evidence to support the finding, we examine the entire record to see if the contrary proposition is established as a matter of law.[28] We review conclusions of law de novo.[29]

## IV. PROCEDURAL ISSUES REGARDING HARCO'S MOTION TO DISSOLVE THE WRIT OF GARNISHMENT

### A. Harco's Standing Under Rule 664a

■ In their seventh point of error, the Thompsons assert Harco had no standing to request dissolution of the writ under Rule 664a. They contend that Rule 664a may be used only by a debtor in garnish-

ment, such as Henderson, not by a garnishee like Harco.

Harco contends that it had standing to seek relief under Rule 664a for two reasons. First, it contends the word "defendant" in Rule 664a encompasses both the debtor (e.g., the judgment debtor or defendant in the underlying lawsuit) and the garnishee as the named defendant in the garnishment proceeding. Second, although Harco apparently recognizes it is not an intervening party, it contends it has standing because the "property being garnished belongs not to Henderson, but in fact to Harco." We question both contentions.

Harco's proposed interpretation of "defendant" in Rule 664a conflicts with the meaning of "defendant" in the remaining rules of civil procedure pertaining to garnishment. Those rules always use "defendant" to refer to the debtor[30] not the garnishee—with two exceptions. (Rules 659 and 675 refer to the garnishee as the "defendant" when they direct the trial court to docket the garnishment proceeding "in the name of the plaintiff as plaintiff and of the garnishee as defendant.")[31] Even those rules, however, subsequently refer to the recipient of the writ as the "garnishee," not the "defendant,"[32] and one of those rules specifically refers to the

sal Health Servs., Inc., 778 S.W.2d 492, 497 (Tex.App.—Dallas 1989, writ denied), cert. denied, 498 U.S. 854, 111 S.Ct. 149, 112 L.Ed.2d 115 (1990).

**24.** See Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex.1995); see also Weirich v. Weirich, 833 S.W.2d 942, 945 (Tex.1992).

**25.** See Crye, 907 S.W.2d at 499; Seideneck v. Cal Bayreuther Assocs., 451 S.W.2d 752, 754 (Tex.1970); In re King's Estate, 150 Tex. 662, 664, 244 S.W.2d 660, 661 (1951).

**26.** See Crye, 907 S.W.2d at 499; Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex.1994). See generally William Powers, Jr. & Jack Ratliff, Another Look at "No Evidence" and "Insufficient Evidence," 69 TEXAS L.REV. 515 (1991).

**27.** See Tubelite v. Risica & Sons, Inc., 819 S.W.2d 801, 805 (Tex.1991); see also Litton

Indus. Prods., Inc. v. Gammage, 668 S.W.2d 319, 324 (Tex.1984).

**28.** See Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex.1989); see also Holley v. Watts, 629 S.W.2d 694, 696–97 (Tex.1982); Texas & N.O.R. Co. v. Burden, 146 Tex. 109, 120–25, 203 S.W.2d 522, 528–31 (1947); Powers, supra note 26, at 523.

**29.** See City of Euless v. Dallas/Fort Worth Int'l Airport Bd., 936 S.W.2d 699, 702 (Tex.App.—Dallas 1996, writ denied).

**30.** See TEX.R. CIV. P. 658–658a, 661, 663a, 664–664a, 666–670, 673, 677–678.

**31.** TEX.R. CIV. P. 659, 675.

**32.** TEX.R. CIV. P. 659, 675.

**616** ■

debtor (not the garnishee) as the "defendant."[33]

Moreover, authorizing a garnishee to seek relief under Rule 664a is not required by the rationale underlying this rule. The Texas Supreme Court added Rule 664a after the United States Supreme Court struck down the ancillary writ procedures of several states on procedural due process grounds.[34] Its purpose was to allow *debtors*, particularly in prejudgment garnishment proceedings where the writ was issued *ex parte*, an expedited opportunity to be heard before their property was summarily garnished and possibly sold.[35]

There are no due process requirements implicated by not affording the garnishee a supplemental, expedited procedure for attacking the writ of garnishment. By its terms, the writ addresses only the assets of the debtor in the garnishee's possession—not the garnishee's assets. The form of the writ is specified in Rule 661; it directs the garnishee to:

> answer under oath what, if anything, you are indebted to the [defendant], and were when this writ was served upon you, and what effects, if any, of the said [defendant] you have in your possession, and had when this writ was served, and what other persons, if any, within your knowledge, are indebted to the said [defendant] or have effects belonging to him in their possession. You are further commanded NOT to pay to defen-

dant any debt or to deliver to him any effects, pending further order of this court.[36]

The parties may dispute, as they do here, whether the garnishee is indebted to the debtor. But that dispute is constitutionally indistinguishable from such disputes in a non-garnishment context and does not compel the expansion of Rule 664a to include garnishees.

Despite our reservation as to whether Rule 664a authorizes garnishees to move to dissolve the writ, we need not decide the issue. The Thompsons did not object to Harco's alleged lack of standing under Rule 664a, or otherwise raise the issue before or during the hearing. Typically, standing is a component of subject matter jurisdiction.[37] In that context, lack of standing cannot be waived and can be raised for the first time on appeal.[38] In contrast, standing under Rule 664a is a *procedural* issue; it does not affect the trial court's jurisdiction over the garnishment proceeding or over the parties. Generally, before a party may complain of error on appeal, the error must be brought to the trial court's attention.[39] Because the Thompsons did not raise the issue of Harco's alleged lack of standing before or during the hearing, we hold the Thompsons have waived any complaint about Harco's ability to seek relief under Rule 664a or about the trial court's ability to

33. "The writ shall command the *garnishee* to answer under oath upon such return date what, if anything, he is indebted to the *defendant*, and was when the writ was served, and what effects, if any, of the *defendant* he has in his possession, and had when such writ was served, and what other persons, if any, within his knowledge, are indebted to the *defendant* or have effects belonging to him in their possession." Tex.R. Civ. P. 659 (emphasis added).

34. *See Sniadach v. Family Fin. Corp.*, 395 U.S. 337, 342, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *see also North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 608, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Fuentes v. Shevin*, 407 U.S. 67, 96–97, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

35. *See Swiderski*, 706 S.W.2d at 677–78. *See generally* Pat Beard, *Due Process and Ancillary Writs*, 30 Baylor L.Rev. 23 (1978); Luther H. Soules III, *Attachment, Sequestration, and Garnishment: 1977 Rules*, 32 Sw. L.J. 753 (1978).

36. Tex.R. Civ. P. 661.

37. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 445 (Tex.1993).

38. *See id.* at 445–46.

39. *See Oak Park Townhouses v. Brazosport Bank of Tex., N.A.*, 851 S.W.2d 189, 190 (Tex. 1993).

grant that relief if appropriate. We overrule point of error seven.

## B. Dismissal on Preliminary Motion to Dissolve Writ

■ In their eighth point of error, the Thompsons claim the trial court erred in dismissing their writ of garnishment action on a preliminary motion to dissolve the writ. However, if there is no writ, there is no legal ground for holding the garnishee liable, either under the provisions of the Texas Rules of Civil Procedure[40] or the Texas Civil Practice and Remedies Code.[41] Thus, if a trial court properly dissolves the writ under Rule 664a, all other issues relating to the garnishment proceeding are moot, and the cause may be properly dismissed. We overrule point of error eight. Whether the trial court properly dissolved the writ pursuant to Harco's motion is an issue we consider within the context of the Thompsons' other points of error.

## V. SUBSTANTIVE ISSUES REGARDING HARCO'S MOTION TO DISSOLVE THE WRIT OF GARNISHMENT

As noted above, a Rule 664a motion typically requires the garnishor to prove "the grounds relied upon for [the writ's] issuance" in order to avoid dissolution of the writ of garnishment.[42] Here the writ was issued on the Thompsons' assertions: (1) that they had a valid, subsisting judgment against Henderson; and (2) that Henderson did not, within the Thompsons' knowledge, possess sufficient property in the state that is subject to execution to satisfy the judgment.[43]

## A. Valid, Subsisting Judgment

In their first point of error, the Thompsons contend there is no evidence to support the trial court's findings that they did not have a valid, subsisting judgment against Henderson in the personal injury case. In their third point of error, the Thompsons contend they proved as a matter of law that the default judgment in the personal injury action was a final judgment; thus, the trial court erred in refusing to conclude the order granting a new trial in the personal injury action was void because it was signed after the trial court lost plenary jurisdiction over the default judgment. In their second point of error, the Thompsons contend the trial court erred in refusing to find a number of their additional requested findings of fact establishing that the judgment against Henderson was final.

### 1. Rules 306a(4) and 306a(5)

Under Rule 329b(d), a trial court loses plenary jurisdiction to grant a new trial thirty days after signing a judgment, absent a timely motion for new trial.[44] However, Rule 306a(4) extends this deadline if a party, adversely affected by a judgment (or that party's attorney) has neither received the notice sent by the court clerk nor acquired actual knowledge of the judgment within twenty days after it is signed. In that event, the time periods provided by Rule 329b begin to run on the date the party or his attorney first received such notice or acquired actual knowledge.[45] In no event, however, does the timetable begin to run later than ninety days after the judgment was signed.[46]

---

40. TEX.R. CIV. P. 657–659.

41. TEX. CIV. PRAC. & REM.CODE ANN. § 63.003 (Vernon 1997).

42. TEX.R. CIV. P. 664a.

43. *See Swiderski,* 706 S.W.2d at 678 (valid, subsisting judgment); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 63.001(3) (Vernon 1986); *Huie–Clark Joint Venture,* 629 S.W.2d at 111 (insufficient property within the state).

44. TEX.R. CIV. P. 329b(d); *see Jackson v. Van Winkle,* 660 S.W.2d 807, 808 (Tex.1983); *see also Gonzalez v. Sanchez,* 927 S.W.2d 218, 220 (Tex.App.—El Paso 1996, no writ); *Womack–Humphreys Architects, Inc. v. Barrasso,* 886 S.W.2d 809, 812–13 (Tex.App.—Dallas 1994, writ denied).

45. TEX.R. CIV. P. 306a(4).

46. *See id.*

To establish whether Rule 306a(4) applies, Rule 306a(5) requires

the party adversely affected ... to prove in the trial court, on *sworn motion* and notice, the date on which the *party or his attorney first* either *received* a notice of the judgment *or acquired* actual knowledge of the signing and that this date was more than twenty days after the judgment was signed.[47]

The purpose of the Rule 306a(5) motion is to establish a *prima facie* showing that the trial court has jurisdiction to conduct a hearing on whether Rule 306a(4) applies.[48] The party seeking relief under Rule 306a(4) has thirty days from the first date he or his attorney receives the clerk's notice or acquires actual knowledge of the judgment to establish a *prima facie* showing of the Rule 306a(5) requirements.[49] Unless the party seeking relief makes this *prima facie* showing, he does not reinvoke the trial court's jurisdiction to conduct a hearing on whether to grant relief under Rule 306a(4). Thus, compliance with Rule 306a(5) is a prerequisite for invoking the trial court's jurisdiction to grant relief under Rule 306a(4).[50]

This Court has previously addressed the requirements of Rule 306a(5). In *Womack–Humphreys Architects, Inc. v. Barrasso*,[51] the plaintiff obtained a default judgment against Barrasso on December 5, 1990. On January 14, 1991, Barrasso filed a motion for new trial, verified by counsel, asserting that he did not receive notice within twenty days of the judgment and that he received notice "after December 25, 1990." In addition, Barrasso's motion alleged that his failure to answer was due to accident or mistake and was not intentional or the result of conscious indifference; that the attached affidavit established a meritorious defense; and that the plaintiff would not be prejudiced by a new trial. Barrasso later filed several "amended" affidavits adding some assertions and deleting others.

This Court held that Barrasso's motion for new trial failed to satisfy Rule 306a(5) for several reasons. First, the motion failed to state a *specific first date* on which Barrasso received notice or acquired actual knowledge of the judgment. The statement in the motion and affidavit that notice was received after December 25 was, at most, an assertion that notice was received *more than twenty days after the judgment was signed*. That assertion, although required by Rule 306a(5), was insufficient to meet its additional requirement that the motion state the specific date notice was received or actual knowledge acquired.

Second, because Barrasso's motion and affidavit asserted only that he did not receive *notice* of the judgment in a timely manner, they failed to negate Barrasso's acquisition of *actual knowledge* of the judgment within twenty days of the date it was signed, as required by the Rule 306a(5). Finally, the motion and affidavit dealt only with Barrasso; thus it failed to show whether *Barrasso's attorney* either received notice or acquired actual knowledge within twenty days of the judgment. Since Barrasso's Rule 306a(5) motion and affidavit did not make a *prima facie* showing that Rule 306a(4) applied, they did not reinvoke the trial court's jurisdiction to hear the motion.

### 2. Analysis

■ With the above rules and precedents in mind, we now turn to whether the Thompsons, in the Rule 664a hearing, proved as a matter of law that they had a

---

47. Tex.R. Civ. P. 306a(5) (emphasis added).

48. *See Barrasso*, 886 S.W.2d at 814.

49. *See id.* at 816. *But see Vineyard Bay Dev. Co. v. Vineyard on Lake Travis*, 864 S.W.2d 170, 172 (Tex.App.—Austin 1993, writ denied) (time period to establish *prima facie* case is not limited to thirty days).

50. *See Barrasso*, 886 S.W.2d at 813; *see also Memorial Hosp. v. Gillis*, 741 S.W.2d 364, 365 (Tex.1987) (per curiam).

51. 886 S.W.2d at 809.

final judgment against Henderson. The trial court signed the default judgment in the personal injury action on March 22, 1993. Absent a timely motion for new trial, the trial court ordinarily would lose plenary jurisdiction on April 21, 1993.[52] Thus, unless Rule 306a(4) applies, the motion for new trial filed on April 22, 1993 (as supplemented) was untimely, and the trial court had no jurisdiction to rule on its merits.

The Thompsons contend they proved, as a matter of law, that Henderson did not comply with Rule 306a(5) in seeking relief from the default judgment in the personal injury suit. If so, as a matter of law the trial court no longer had plenary jurisdiction over the default judgment, and thus its order granting a new trial was void. Therefore, according to the Thompsons, the trial court in the garnishment proceeding erred in finding they did not have a judgment against Henderson, refusing to declare void the order granting the motion for new trial in the personal injury action, and refusing to find the March 22, 1993 default judgment was final.

Harco contends Henderson *did* satisfy Rule 306a(5), and thus reinvoked the trial court's jurisdiction to determine whether the time period for filing a motion for new trial was delayed by the operation of Rule 306a(4). Harco argues that by entering an order granting the motion for new trial, the trial court impliedly found Henderson was entitled to relief under Rule 306a(4).[53] This implied finding made Henderson's motion for new trial timely, which in turn extended the time period during which the trial court had plenary jurisdiction over the default judgment. Because the trial court entered its order vacating the default judgment and granting a new trial during this extended time period, Harco claims the evidence supports the trial court's findings in the garnishment action that the Thompsons did not have a valid, subsisting judgment against Henderson.

Restating the requirements of Rule 306a(5), a motion and/or its accompanying affidavits must state, under oath, two specific dates: (1) the specific date the party first either (a) received the clerk's notice of the judgment, or (b) acquired actual knowledge of the judgment; and (2) the specific date the party's attorney first either (a) received the clerk's notice of the judgment, or (b) acquired actual knowledge of the judgment.[54] These dates must be more than twenty days after the judgment was signed.[55]

To determine whether the Thompsons proved that Henderson did not comply with Rule 306a(5), we review the clerk's record from the personal injury action, which was before the court below.[56] The relevant portions of that record are Rickman's affidavit filed in support of the original (joint) motion for new trial; the 1993

52. Tex.R. Civ. P. 329b(d); *see Barrasso*, 886 S.W.2d at 812–13.

53. *See Gee v. Lewisville Mem'l Hosp., Inc.*, 849 S.W.2d 458, 460 (Tex.App.—Fort Worth 1993, writ denied).

54. *See* Tex.R. Civ. P. 306a(4), (5); *Barrasso*, 886 S.W.2d at 813.

55. *See* Tex.R. Civ. P. 306a(4), (5).

56. The trial court in the personal injury suit could also have considered any sworn testimony or other evidence offered during the hearing, if the hearing was conducted within thirty days of the date Henderson or his attorney first acquired actual knowledge of the judgment. *See Barrasso*, 886 S.W.2d at 814

n. 3 (unobjected-to, unsworn motion for new trial was sufficient when coupled with sworn testimony from an evidentiary hearing conducted within thirty days after the movant first acquired notice or actual knowledge of the judgment.) However, the hearing was held on May 28, 1993. Even assuming Henderson or his attorney first learned of the default judgment on the date they filed the original motion for new trial (April 22, 1993), the hearing was held after the time period for timely presenting to the trial court a *prima facie* case for applying Rule 306a(4). Additionally, the reporter's record reflects that Henderson offered no additional evidence or testimony at the hearing. Although the trial court allowed the Thompsons to speak to the court, their statements did not address any of the facts required by Rule 306a(5).

affidavits (of Leary and Henderson) that were filed in support of the supplemental motion for new trial; and the original and supplemental motions for new trial themselves.

### (a). Rickman's affidavit

Rickman's sworn affidavit contained a conclusory statement that the motion for new trial was timely filed, as well as statements concerning matters that had "been explained to [him]" by some unidentified person. The gist of those matters was that "Harco was under the mistaken belief that a default judgment would not be entered if [Henderson] appeared on or before April 22, 1993." Rickman's affidavit also stated that the statements in the original (joint) motion for new trial were "true and correct as to the best of [Rickman's] knowledge." Thus Rickman's affidavit was silent as to when Henderson or his attorney received the clerk's notice, or otherwise first acquired actual knowledge of the judgment.

### (b). Leary's 1993 affidavit

Harco relies on Leary's 1993 affidavit to satisfy the requirements of Rule 306a(5) and thus to contain the proof supporting the trial court's findings that the Thompsons did not have a valid, subsisting judgment against Henderson. Therefore, we consider this affidavit in some detail.

According to Leary's affidavit, he contacted the Thompsons' attorney in February 1992 and told him Henderson was not involved in the accident. He promised to provide proof supporting this assertion, including a signed statement from Henderson. In response, the Thompsons' attorney agreed (apparently orally) to extend Henderson's answer date indefinitely. A few days later, Leary sent the Thompsons' attorney some information regarding Henderson and the other parties to the suit. In December 1992, Leary sent the Thompsons' attorney a statement from Henderson denying that Henderson owned or operated the truck involved in the accident. Henderson's statement indicated that Henderson had sold a truck to some of the other defendants before the acci-

dent. However, to Henderson's knowledge, the truck he sold was not the one involved in the accident.

Leary believed that after providing this information, Henderson would not have to file an answer and the suit would be dismissed. His affidavit continues: *On or about April 12, 1993,* I corresponded with plaintiff's [sic] attorney again to determine if he had secured the proper defendants in this matter. In addition, I requested he notify me if he did not secure proper defendants so that I could obtain local counsel to answer on behalf of Mr. Henderson. It was my understanding that an answer could be timely filed pursuant to plaintiff's [sic] extension.

*Shortly thereafter,* I received plaintiff's [sic] correspondence dated April 15, 1993. I misread the letter and thought it gave Mr. Henderson and John W. Henderson Trucking Company fourteen additional days in which to file an answer.... *On or about April 21, 1993,* I faxed plaintiff's April 15, 1993, letter to the local counsel that I had retained. *At that time, local counsel advised me that a default judgment had been taken* and that plaintiffs [sic] attorney's letter stated plaintiffs would not execute on such default for fourteen days (April 22, 1993).

(Emphasis added.)

Harco points to Leary's statement that he received correspondence *dated* April 15, 1993 regarding the default judgment as sufficient to meet the requirements of Rule 306a(5). Leary's affidavit is insufficient for several reasons.

First, Leary swore he contacted the Thompsons' attorney "[o]n or about April 12, 1993" and, "shortly thereafter," he received plaintiffs' April 15, 1993 letter. Having misread this letter, he faxed it to local counsel "on or about April 21, 1993" and was advised "at that time" (*i.e.,* on or about April 21, 1993) that the Thompsons had taken a default judgment. None of these averments are sufficient to state the *specific* date Leary first learned of the

default judgment. Like the "after December 25" language in *Barrasso*, Leary's statement asserts, at most, that he first had actual knowledge of the default judgment on or after April 21, 1993. Likewise, Leary's statement that he faxed the April 15 letter to local counsel "on or about April 21, 1993" is insufficient to state the specific date Henderson's attorney first learned of the default judgment.

Leary's affidavit is insufficient for yet another reason. The specific date required by Rule 306a(5) is the date Henderson or his attorney first either received the clerk's notice or acquired actual knowledge of the judgment, not the date of Leary's first actual knowledge. Leary's affidavit speaks to his own knowledge, not Henderson's. The parties assume that Leary is Henderson's agent, so that Leary's knowledge may be imputed to Henderson. However, even if Leary had stated the specific date he first learned of the default judgment, that would only indicate the *latest date* Henderson could be considered, as a matter of law, to have lacked knowledge of the default judgment. It reveals nothing about the *first date* Henderson had knowledge, which is the date required by Rule 306a(5). Simply put, imputing Leary's knowledge to Henderson does not mean the trial court can impute Leary's prior ignorance to Henderson, absent an express statement in the record that Henderson first learned of the default judgment from Leary. The record before the trial court contains no such statement.

Lastly, Leary's 1993 affidavit omits any reference to the specific date Henderson (directly or through his agent) or an attorney for Henderson received the clerk's notice. Indeed, he does not speak of the clerk's notice at all.

### (c). Henderson's 1993 affidavit

Henderson's 1993 affidavit did not contradict Leary's, but added little. According to Henderson's affidavit, he understood if Harco provided certain documents to the Thompsons' attorney establishing that Henderson was not the owner of the truck involved in the accident, the Thompsons would nonsuit their claims against him, and he would not have to file an answer. He indicated he sent such documents to the Thompsons' original attorney on December 15, 1992. He further stated that Harco was under the mistaken impression that the Thompsons had extended the time for Henderson to file an answer until April 22, 1993.

Henderson's affidavit is also silent as to the *specific first date* he acquired actual knowledge of the judgment. Also, like Leary's affidavit, Henderson's affidavit omits any reference to the specific date Henderson (directly or through his agent) or an attorney for Henderson received the clerk's notice.

### (d). Original and supplemental motions

The original (joint) motion contained no allegations of fact relevant to whether Henderson met the requirements of Rule 306a(5). The supplemental motion contained one allegation relevant to Rule 306a(5). It alleged: "Local counsel was contacted on April 21, 1993. At that time, Defendants, through local counsel, learned the true nature of the misunderstandings and realized that a default judgment had been rendered." This allegation differs from Leary's sworn statement that he forwarded the April 15, 1993 letter to local counsel "on *or about* April 21, 1993," and that he was advised "at that time" that the Thompsons had taken a default judgment. Moreover, the supplemental motion, like the original motion, is unsworn. Thus, its allegations are insufficient to present a *prima facie* case that Rule 306a(4) applied in the personal injury action.[57]

### (e). Henderson's answer to 1995 motion and the 1995 affidavits

 We exclude from our analysis Henderson's answer to the 1995 motion and the 1995 affidavits. These documents were not filed in the personal injury suit

---

**57.** TEX.R. CIV. P. 306a(5).

until May 11, 1995, almost two years after the trial court heard and granted Henderson's motion and approximately twenty-two months after Henderson filed (along with the Thompsons) the first motion for new trial. For Henderson to reinvoke the trial court's plenary jurisdiction to determine whether to grant relief under Rule 306a(5), he had to establish a *prima facie* case for jurisdiction within thirty days of the first date either the movant or his attorney (1) received the clerk's notice of the judgment or (2) acquired actual knowledge of the judgment.[58] Assuming this date was the date Henderson filed the original motion for new trial (April 22, 1993), and that Henderson's response to the 1995 motion and the 1995 affidavits filed in support of that response met the requirements of Rule 306a(5), they were filed approximately twenty-three months after the time period for complying with Rule 306a(5), and approximately twenty-two months too late to be considered by the trial court.[59]

### *(f). Summary*

We have carefully considered Rickman's affidavit filed in support of the original (joint) motion for new trial; the 1993 affidavits (of Leary and Henderson) filed in support of the supplemental motion for new trial; and the original and supplemental motions for new trial themselves. We conclude that, taken individually or together, they do not meet the requirements of Rule 306a(5). Thus they did not present a *prima facie* case for reinvoking the trial court's jurisdiction to consider whether Rule 306a(4) delayed the start of the time period during which the trial court retained plenary jurisdiction over the default judgment.

### 3. Estoppel

■ Harco argues the Thompsons should be estopped from denying that Henderson complied with Rule 306a(5). The Thompsons originally agreed to the motion for new trial, and they did not object to Henderson's and Leary's affidavits at the hearing on the motion for new trial. Moreover, Harco argues the Thompsons waited two years before first arguing that the order granting the new trial was void. As noted above, the original motion for new trial, although entitled an agreed motion, was actually a joint motion. We question whether the Thompsons validly withdrew their joinder to this motion. Nevertheless, we need not decide this issue because the parties, by estoppel, cannot confer jurisdiction on a court that has lost power to act.[60]

### 4. Implied application of Rule 306a(4) under *Gee*

■ Harco contends that the court in the personal injury suit impliedly found that Henderson had satisfied Rule 306a(5) and was entitled to relief under Rule 306a(4). The sole case Harco cites in support of this argument is *Gee v. Lewisville Memorial Hospital.*[61] There, the Fort Worth Court of Appeals concluded that the trial court impliedly found a date that the defendant hospital first received notice of the default judgment for two reasons: "[b]ecause the Hospital filed a sworn motion containing the *date* on which it first received knowledge of the default judgment, and because the trial court's order states the Hospital complied with Rule 306a(4)...."[62]

Neither of these reasons is applicable to the present case. First, as noted in detail above, Henderson's documents failed to contain a sworn statement of the date Henderson first acquired actual knowledge

---

**58.** *See Barrasso,* 886 S.W.2d at 816.

**59.** *Id.*

**60.** *See Washington v. Tyler Indep. Sch. Dist.,* 932 S.W.2d 686, 689–90 (Tex.App.—Tyler 1996, no writ); *see also Gem Vending, Inc. v.* *Walker,* 918 S.W.2d 656, 658 (Tex.App.—Fort Worth 1996, no writ).

**61.** 849 S.W.2d at 460.

**62.** *Id.*

of the default judgment. Second, Henderson's motion (as supplemented), the 1993 affidavits, and the order granting a new trial all fail to even mention Rule 306a(4) or Rule 306a(5).

■ The character of a motion is determined from its substance, not its caption.[63] Thus, while an effective advocate will caption a motion to signal clearly the nature or grounds of the relief sought, we disagree with the Thompsons' contention that relief under Rule 306a(4) is unavailable except through a motion carrying that appellation. However, absent some indication that a movant is seeking relief under Rule 306a(4) or that a court is granting relief under Rule 306a(4), we reject any contention that a trial court "impliedly" grants relief under Rule 306a(4) if it grants a motion for new trial filed more than thirty days after the entry of a final judgment.

### 5. Conclusion

It is undisputed that Henderson filed his motion for new trial in the personal injury suit more than thirty days after the trial court entered the default judgment. Further, the Thompsons proved as a matter of law that Henderson did not comply with Rule 306a(5) in the personal injury suit, and thus did not reinvoke the trial court's jurisdiction to determine whether Rule 306a(4) applied to the default judgment. We also reject, under the facts of this case, Harco's contention that the trial court "impliedly" granted relief under Rule 306a(4). Therefore, the order vacating the default judgment as to Henderson and granting him a new trial in the personal injury suit was entered after the trial court's plenary jurisdiction over the default judgment had expired. As such it was void as a matter of law.

As a result, we hold there is no evidence to support the trial court's findings that the Thompsons did not have a valid, subsisting judgment against Henderson in the

personal injury case. We sustain point of error one. We also hold the trial court erred in refusing to conclude that the order granting the motion for new trial in the personal injury action was void because it was signed after the court lost plenary jurisdiction over the default judgment. We sustain point of error three. In view of our holdings with respect to points of error one and three, we need not address point of error two.[64]

### B. Sufficient Property in the State

■ To obtain their writ of garnishment, the Thompsons also alleged that Henderson did not, within the Thompsons' knowledge, possess sufficient property in the state that is subject to execution to satisfy the judgment. Thus, normally the Thompsons would have to prove this ground in order to avoid dissolution of the writ on a Rule 664a motion.[65] In this case, however, Harco constricted the issues to be heard under its motion to only one question: whether the Thompsons had a valid judgment against Henderson. Three times Harco's counsel insisted that this was the only issue before the court at the hearing. Neither party sought to introduce any evidence or to make any argument regarding whether the Thompsons knew of property within the state owned by Henderson that was sufficient to satisfy the amount of the default judgment. The trial court made no findings of fact relative to this issue, and Harco does not contend, in its brief or argument, that this issue was addressed by the trial court, tried by consent, or decided in its favor. We conclude that under these circumstances, to avoid dissolution of the writ on Harco's motion, the Thompsons were not required to prove that, within their knowledge, Henderson did not possess sufficient property in the state, subject to execution, to satisfy the judgment.

---

63. *Davis v. Mathis,* 846 S.W.2d 84, 89 (Tex. App.—Dallas 1992, no writ); *see* TEX.R. CIV. P. 71.

64. *See* TEX.R.APP. P. 47.1.

65. TEX.R. CIV. P. 664a.

## C. Harco's Indebtedness to Henderson

In their fourth point of error, the Thompsons assert there is no evidence to support the trial court's finding that Harco was not indebted to Henderson. In their fifth point of error, the Thompsons assert that the trial court erred in refusing to find, as requested by the Thompsons: (1) that Henderson was covered by a policy issued by Harco at the time of the accident and at the time of the default judgment in the personal injury action; and (2) that the terms of that policy were set forth in an exhibit introduced at the Rule 664a hearing. In their sixth point of error, the Thompsons urge that the trial court erred in refusing to make specific additional conclusions of law that the Thompsons are entitled to judgment against Harco for the limits of the policy and the percentages by which the Thompsons should share in the judgment.

All of these matters relate to the issues of whether Harco was indebted to Henderson and, if so, the amount of the indebtedness. These issues are not raised by a motion to dissolve the writ using the preliminary, summary procedures set forth in Rule 664a[66] and were not raised by Harco's motion. Thus, whether Harco was indebted to Henderson was not an ultimate issue with respect to Harco's request for relief. Neither were the existence and extent of any indebtedness by Harco to Henderson issues tried by consent; the record clearly establishes that the parties and the trial court conducted a hearing under the expedited procedures of Rule 664a, not a trial of the garnishment action. Therefore, the trial court's findings on this issue were superfluous, premature, and

66. See *Swiderski,* 706 S.W.2d at 678.

67. See *Tomlinson v. Jones,* 677 S.W.2d 490, 492 (Tex.1984).

68. See *Anderson v. City of Seven Points,* 806 S.W.2d 791, 795 n. 3 (Tex.1991).

69. See *F.D.I.C. v. F & A Equip. Leasing,* 854 S.W.2d 681, 685 (Tex.App.—Dallas 1993, no writ).

immaterial. We sustain point of error four.

For the same reason, it was not error for the trial court to refuse to make the Thompsons' requested findings of fact regarding the existence and extent of Harco's indebtedness to Henderson. Thus, we overrule points of error five and six.

## VI. COUNTERCLAIM FOR WRONGFUL GARNISHMENT

In their tenth point of error, the Thompsons contend there was no evidence or, alternatively, insufficient evidence to support the trial court's finding that the Thompsons wrongfully filed their application for writ of garnishment against Harco. No evidence points are questions of law.[67] We sustain a no evidence point of error when the evidence conclusively establishes the opposite of the vital fact.[68] When we sustain a no evidence point, it is our duty to render judgment for the appellant because that is the judgment the trial court should have rendered.[69]

A garnishment is wrongful if the factual allegations in the affidavit prescribed by section 63.001 of the Texas Civil Practice and Remedies Code are false.[70] In this case, the Thompsons made the two allegations necessary to obtain a post-judgment writ of garnishment: (a) that they had a valid, subsisting judgment against Henderson; and (b) that, within their knowledge, Henderson did not possess property in Texas that is subject to execution sufficient to satisfy the judgment.[71]

The hearing below was on Harco's Rule 664a motion. However, Harco presented

70. See *Chandler v. Cashway Bldg. Materials, Inc.,* 584 S.W.2d 950, 952 (Tex.Civ.App.—El Paso 1979, no writ).

71. See Tex. Civ. Prac. & Rem.Code Ann. § 63.001(3) (Vernon 1997).

and argued its wrongful garnishment counterclaim at the hearing, without objection by the Thompsons. At the conclusion of the hearing, the trial court signed a judgment stating that the writ should be dissolved because "it was wrongfully garnished." The trial court later signed and filed findings of fact and conclusions of law, in which it stated "Plaintiffs wrongfully filed its [sic] Application for Writ of Garnishment against Harco National Insurance Company." Thus, we conclude that the court below tried Harco's wrongful garnishment counterclaim by the consent of the parties.[72]

The sole ground Harco asserted in the trial court and on appeal in support of its wrongful garnishment counterclaim was the same as that supporting Harco's Rule 664a motion—that the Thompsons did not have a valid, subsisting judgment against Henderson. We have determined, as a matter of law, that they do. Thus, we conclude there is no evidence to support the trial court's finding that the Thompsons wrongfully filed their application for writ of garnishment against Harco. We sustain point of error ten.

## VII. ATTORNEY'S FEES AND COSTS

In their ninth point of error, the Thompsons contend the trial court erred by awarding attorney's fees and costs on a preliminary motion to dissolve. In their eleventh and twelfth points of error, the Thompsons contend there was no evidence or insufficient evidence to show that Harco incurred $2,400 in reasonable attorney's fees and costs.

Rule 677 provides:

Where the garnishee is discharged upon his answer, the costs of the proceeding, including a reasonable compensation to the garnishee, shall be taxed against the plaintiff; where the answer of the garnishee has not been controverted and the garnishee is held thereon, such costs shall be taxed against the defendant and included in the execution provided for in this section; *where the answer is contested, the costs shall abide the issue of such contest.*[73]

In this case, Harco's answer was contested. Just as the trial court's determination of whether Harco was indebted to Henderson is to be determined on remand, the "issue of [the] contest" remains to occur. Thus, the trial court's award of attorney's fees and costs was premature. We sustain points of error eight and nine. We need not address points of error eleven and twelve.[74]

## VIII. CONCLUSION

In summary, we hold: (1) the Thompsons waived any procedural error based on Harco's standing under Rule 664a; (2) the Thompsons proved, as a matter of law, that they had a valid, subsisting judgment against Henderson; (3) whether Harco was indebted to Henderson, and the amount of any such indebtedness, was not at issue in the Rule 664a hearing, and any findings relating to that issue were premature and irrelevant; (4) there is no evidence the Thompsons wrongfully filed their garnishment action; and (5) the trial court's award of attorney's fees and costs was premature. For these and the other reasons set forth above, we reverse the judgment of the trial court, render judgment that Harco take nothing by way of its wrongful garnishment counterclaim, and remand the remainder of the case for further proceedings consistent with this opinion.

MALONEY, J., concurs with opinion.

---

**72.** *See* Tex.R. Civ. P. 67; *RE/MAX of Tex., Inc. v. Katar Corp.,* 961 S.W.2d 324, 328 (Tex. App.—Houston [1st Dist.] 1997, writ requested).

**73.** Tex.R. Civ. P. 677 (emphasis added).

**74.** *See* Tex.R.App. P. 47.1.