**BANK ONE, N.A., Appellant,**

v.

**Douglas W. WOHLFAHRT, Appellee.**

**No. 01–04–00905–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

March 30, 2006.

Curt M. Langley, Jackson Walker L.L.P., Houston, TX, for Appellant.

Benjamin C. Wilson, Law Offices of Benjamin C. Wilson, PC, Houston, TX, for Appellee.

Panel consists of Justices TAFT, HIGLEY, and BLAND.

## OPINION

JANE BLAND, Justice.

In a post-judgment garnishment proceeding, appellant, Bank One, N.A., sought to execute on a judgment that its predecessor-in-interest had obtained against appellee, Douglas Wohlfahrt, in 1987. The trial court granted partial summary judgment to Wohlfahrt based on payment and awarded him $3,878.44 after a jury found Bank One had wrongfully garnished his bank account. On appeal, Bank One contends the trial court erred in (1) granting partial summary judgment to Wohlfahrt on the ground that he had fully paid the judgment; (2) submitting Wohlfahrt's wrongful garnishment counterclaim to a jury; and (3) allowing Wohlfahrt to withdraw certain funds from the registry of the court. We hold that the trial court should not have granted partial summary judgment to Wohlfahrt based on payment, and therefore reverse and remand the cause for further proceedings.

## Background

In 1985, Wohlfahrt executed two promissory notes to Citizens Bank Houston, Bank One's predecessor-in-interest.[1] Wohlfahrt failed to repay the notes as agreed, leading to the bank's collection lawsuit in 1986. The trial court signed a default judgment against Wohlfahrt in March 1987. Two months later, the trial court set aside the default judgment and signed an Order of Agreed Judgment, which states that Wohlfahrt owes the bank $107,000, together with post-judgment interest at the rate

1. Citizens Bank Houston merged into Team Bank in 1989. Three years later, Team Bank merged into Bank One, Texas, N.A. Bank One, Texas, N.A. subsequently merged into Bank One, N.A.

of ten percent per annum until the debt is paid ("the Judgment").

Wohlfahrt failed to pay the Judgment and, in 1989, the bank sought a turnover order and appointment of a receiver for Wohlfahrt's medical practice. In August 1989, the parties entered into an "agreement in settlement of" the receivership proceeding ("the Settlement Agreement"). Pursuant to the Settlement Agreement, the parties agreed that Wohlfahrt owed $107,000, plus $24,419.54 in accrued post-judgment interest and $10,007.11 in post-judgment attorney's fees the bank had incurred in attempting to collect the debt. The parties further agreed that interest would continue to accrue at the rate of ten percent per annum, and that the bank would refrain from pursuing its collection rights and remedies against Wohlfahrt as long as he made payments of $3,000 to the bank on the fifteenth of every month.

From August 1989 through January 1994, Wohlfahrt made a series of payments to Bank One. In September 1994, Bank One sent Wohlfahrt's wife a payment summary showing an outstanding balance of $27,373.30. One year later, Wohlfahrt offered to settle the debt with a payment of $10,000, but the parties did not reach an agreement.

In February 1999, Bank One filed a motion for scire facias to revive the Judgment.[2] The trial court signed an Order Reviving Judgment in July 1999. Two years later, Bank One instituted this post-judgment garnishment proceeding. In its application for writ of garnishment and affidavit in support, Bank One stated that it had a valid and subsisting Judgment against Wohlfahrt from 1987, which was

revived by the court in 1999, and that Wohlfahrt still owed $48,621.90 on the Judgment. The garnishee, Independence Bank, filed an answer stating that it had frozen $18,408.71 belonging to Wohlfahrt; Independence Bank tendered that amount to the court and asked that it be discharged.

Wohlfahrt subsequently filed a motion to dissolve the writ of garnishment, contending that he had paid off the Judgment in January 1994. Bank One responded with a motion for judgment in garnishment. One month later, Wohlfahrt counter-claimed for wrongful garnishment against Bank One. The trial court granted Bank One's motion for judgment in garnishment and discharged Independence Bank from the case.

Wohlfahrt continued to argue that he had fully paid the Judgment and asked the trial court to set a supersedeas bond and abate discovery by Bank One. Wohlfahrt's wife thereafter deposited $37,000 in the registry of the court; a handwritten note included with the money stated, "On behalf of Douglas W. Wohlfahrt, $37,000 is being placed in the registry of court [sic], to be held until the Judge releases to winning party."

Bank One subsequently filed a motion for referral to a special master.[3] The trial court appointed banking expert Charles L. Williams as Special Master "for the purpose of reviewing the submissions of the parties, conducting a hearing if necessary, calculating the outstanding balance of the debt based upon the documents produced by the parties, and filing a report with his findings." In the proceedings before the Special Master, Wohlfahrt argued that the

---

**2.** *See* Tex. Civ. Prac. & Rem.Code Ann. § 31.006 (Vernon 1997) ("A dormant judgment may be revived by scire facias or by an action of debt brought not later than the second anniversary

of the date that the judgment becomes dormant.").

**3.** *See* Tex.R. Civ. P. 171.

$107,000 Judgment had been "more than paid in full." Bank One asserted that, in calculating the amount of the outstanding debt, the Special Master should look not only at the Judgment itself, but also at the Settlement Agreement, which required Wohlfahrt to pay an additional $10,007.11 in attorney's fees. At the outset of his report, the Special Master stated as follows:

> The Plaintiff and Defendant ... have a dispute about the legal effect of whether a settlement agreement was reached by the Plaintiff and the Defendant on or about August 29, 1989 via the letter of the same date. Apparently, both sides disagree about the legal effect of this document relating to the payment of the disputed debt. While I have been provided with oral arguments from both attorneys, I defer to the Court for a ruling on any legal issues related to this topic.... Depending on the Court's ruling on these legal disagreements, I may be required to provide further analysis of the amount of debt owed.

The Special Master then concluded that, taking into account the additional $10,007.11 owed by Wohlfahrt pursuant to the Settlement Agreement, the outstanding balance on the debt as of January 6, 1994 was $31,290.35.

In November 2003, Wohlfahrt and Bank One filed cross-motions for summary judgment. The trial court granted partial summary judgment to Wohlfahrt on the ground that he had fully paid the entire amount of the Judgment. The case then proceeded to trial on Wohlfahrt's wrongful garnishment counterclaim. In June 2004, the jury returned a verdict against Bank One, finding that the sworn affidavit filed by Bank One in support of its application for writ of garnishment was false with regard to the allegation that Bank One had a valid and subsisting judgment against Wohlfahrt. Bank One filed a motion for judgment notwithstanding the verdict. The trial court partially granted Bank One's motion and voided the damages award of $9,824.99 for "[p]enalties and taxes paid on funds paid into the registry of the court," as well as the award of $24,000 for attorney's fees, which left an award of $885.82 for "[b]ank fees, penalties, and charges." Wohlfahrt "elected to recover in lieu of actual damages found by the jury, interest at the legal rate allowed by law on the $18,408.71 found by the jury to have been wrongfully garnished," for a total of $3,878.44. The trial court rendered final judgment for Wohlfahrt accordingly. On the same day, the court signed an order (1) releasing the garnished funds to Wohlfahrt and (2) allowing him to withdraw the $37,000 his wife had deposited in the registry of the court. This appeal followed.

## Standard of Review

Our review of a summary judgment is de novo. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003). Under the traditional standard for summary judgment, the movant has the burden to show that no genuine issue of material fact exists and that judgment should be granted as a matter of law. Tex.R. Civ. P. 166a(c); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999). We view all evidence in a light favorable to the nonmovant and indulge every reasonable inference in the nonmovant's favor. *Provident Life,* 128 S.W.3d at 215. When both sides move for summary judgment and the trial court grants one motion and denies the other, we consider both motions, their evidence, and their issues, and we may render the judgment that the trial court should have rendered. *See CU Lloyd's of Tex. v. Feldman,* 977 S.W.2d 568, 569 (Tex. 1998).

### Analysis

Bank One contends the trial court erred in granting partial summary judgment to Wohlfahrt on the ground that he had fully paid the Judgment. Rather, Bank One asserts, the trial court should have granted its own motion for summary judgment because the evidence conclusively establishes that Wohlfahrt still owed money on the Judgment at the time Bank One commenced the garnishment proceeding.

*Amount of the Debt*

■■■ Garnishment is a proceeding in which the property, money, or credits of a debtor that are in the possession of another—the garnishee—are applied to the payment of the debt. *Bank One, Tex., N.A. v. Sunbelt Sav., F.S.B.*, 824 S.W.2d 557, 558 (Tex.1992). Garnishment is purely a statutory remedy, and the statutory provisions are strictly construed:

> The process of garnishment is an inquisitorial proceeding, given to ascertain these facts, so that the effects of the original defendant might be reached and subjected to the payment of his just debts. The act giving this remedy is not entitled to, nor has it ever received, a liberal construction in favor of the party resorting to the remedy.

*Jemison v. Scarborough*, 56 Tex. 358, 361 (1882); *see also Thompson v. Harco Nat'l Ins. Co.*, 997 S.W.2d 607, 611 (Tex.App.Dallas 1998, pet. denied), *overruled in part on other grounds by John v. Marshall Health Servs., Inc.*, 58 S.W.3d 738, 741 (Tex.2001); *Owen Elec. Supply, Inc. v. Brite Day Constr., Inc.*, 821 S.W.2d 283, 286 (Tex.App.Houston [1st Dist.] 1991, writ denied). A garnishor may obtain a writ of garnishment if it has a "valid, subsisting judgment" and makes an affida-

vit that, within its knowledge, the judgment debtor does not possess property in Texas subject to execution sufficient to satisfy the judgment. TEX. CIV. PRAC. & REM.CODE ANN. § 63.001(3) (Vernon 1997); *Thompson*, 997 S.W.2d at 612.

Here, in support of its application for writ of garnishment, Bank One relied on the Judgment, as revived by the trial court's 1999 order. Bank One stated that the Judgment is final, valid and subsisting, and remains unpaid. Nowhere in its application for writ of garnishment and supporting affidavit did Bank One indicate that it was also attempting to garnish funds owed by Wohlfahrt pursuant to the Settlement Agreement. Yet, Bank One took the position both before the trial court and the Special Master, and in its cross-motion for summary judgment, that the $10,007.11 in attorney's fees owed by Wohlfahrt pursuant to the Settlement Agreement (and not included in the Judgment) should be included in calculating the amount owed by Wohlfahrt under the Judgment. The trial court rejected this argument in denying Bank One's cross-motion for summary judgment. We agree with the trial court's determination.

■■■ A trial court has plenary power to vacate, modify, correct, or reform its judgment within thirty days after signing it.[4] *See* TEX.R. CIV. P. 329b(d). Thereafter, the trial court has inherent power to "cause its judgments and decrees to be carried into execution." TEX.R. CIV. P. 308; *Bridas Corp. v. Unocal Corp.*, 16 S.W.3d 887, 889 (Tex.App.Houston [14th Dist.] 2000, pet. dism'd w.o.j.). The only limit on this authority is that enforcement orders may not be inconsistent with the original judgment and may not constitute a material change in substantial adjudicated por-

---

4. After the trial court's plenary power expires, the court may only correct clerical errors in the judgment. *See* TEX.R. CIV. P. 316, 329b(f);

*Escobar v. Escobar*, 711 S.W.2d 230, 231 (Tex. 1986).

tions of the judgment. *Katz v. Bianchi*, 848 S.W.2d 372, 374 (Tex.App.Houston [14th Dist.] 1993, no writ). A post-judgment enforcement order may properly require performance only of the obligations imposed by the final judgment. *Id.* (citing *Wagner v. Warnasch*, 156 Tex. 334, 337–38, 295 S.W.2d 890, 892 (1956)).

■ The Settlement Agreement is not part of the Judgment. Rather, the parties entered into the Settlement Agreement more than two years after the trial court had signed the Judgment. The Settlement Agreement alters the terms of the Judgment to the extent it requires Wohlfahrt to pay the additional sum of $10,007.11. Given that Bank One's application for writ of garnishment was premised upon the terms of the Judgment, and not upon any additional obligations imposed by the Settlement Agreement, the trial court correctly determined that the terms of the Judgment—not the Settlement Agreement— govern payment, because the parties never reduced the Settlement Agreement to a judgment.[5] *Cf. Holtzman v. Holtzman*, 993 S.W.2d 729, 733 (Tex.App.Texarkana 1999, pet. denied) (rejecting appellant's contention that "the settlement agreement should be treated as a part of the judgment"). Pursuant to the terms of the Judgment, Wohlfahrt owes Bank One $107,000, plus post-judgment interest at the rate of ten percent per annum.

**5.** If Bank One intended to enforce the terms of the Settlement Agreement, it should have sued Wohlfahrt for breach of contract. *See Mantas v. Fifth Court of Appeals*, 925 S.W.2d 656, 658–59 (Tex.1996) (holding that proper way to enforce settlement agreement is through breach-of-contract suit); *Bayway Servs., Inc. v. Ameri–Build Constr., L.C.*, 106 S.W.3d 156, 160 (Tex.App.-Houston [1st Dist.] 2003, no pet.) ("The party seeking enforcement of the settlement agreement must pursue a separate breach-of-contract claim, which is subject to normal rules of pleading and proof.").

*Evidence of Payment*

■ Having determined that we are confined to the terms of the Judgment, we now consider the parties' summary judgment evidence concerning the issue of payment. In support of his motion for summary judgment, Wohlfahrt provided the affidavits of his wife, Lynn, and his accountant, J.W. Daubert, III. Lynn's affidavit summarizes the dates and amounts of the payments made by Wohlfahrt and concludes that the payments total $156,039.02. Daubert's affidavit references a spreadsheet he prepared to track the date and amount of each payment made by Wohlfahrt, along with a breakdown indicating the portion of each payment that corresponds to principal and the portion that corresponds to interest. The spreadsheet concludes that Wohlfahrt paid off the Judgment with his fifty-third payment on January 15, 1994. Daubert assumes in the spreadsheet that Wohlfahrt made every payment on the fifteenth of the month.[6]

In determining whether the trial court properly granted partial summary judgment to Wohlfahrt on the issue of payment, we view all the evidence in a light favorable to Bank One and indulge every reasonable inference in Bank One's favor. In support of its cross-motion for summary judgment, Bank One provided the affidavit of its First Vice President, Laurel Varney–Mason. Varney–Mason authenticated a spreadsheet detailing Wohlfahrt's payment

**6.** Although Daubert's affidavit recites that, beginning in September 1993, Wohlfahrt made several payments after the fifteenth of the month, it is clear from our examination of the spreadsheet created by Daubert to track his calculations that he based his entire analysis on the assumption that *every* payment—including those Wohlfahrt made after September 1993—was made on the fifteenth of the month.

history, as compiled from numerous bank records and canceled checks. The spreadsheet indicates that, after applying all of Wohlfahrt's payments to the subject debt, he still owed $31,227.47 as of January 10, 1994. Bank One's spreadsheet contains a fundamental error, however, because it improperly includes the $10,007.11 in attorney's fees from the Settlement Agreement—that is, the spreadsheet incorrectly assumes that Wohlfahrt owed $117,007.11 instead of $107,000. We have already determined that our analysis is confined to the amount of the Judgment and that we may not consider the additional obligations imposed by the Settlement Agreement. As such, we do not indulge the presumption that Wohlfahrt owes an additional $10,007.11. Importantly, however, Bank One's spreadsheet also indicates that the majority of Wohlfahrt's payments were not made on the fifteenth of the month. Many were made on the seventeenth or nineteenth of the month, others were made on the twentieth or even later, and Wohlfahrt skipped some payments entirely.[7] In addition, Bank One's spreadsheet indicates that one payment was returned for insufficient funds.[8]

Viewing this evidence in a light favorable to Bank One, we conclude that the trial court erred in granting partial summary judgment to Wohlfahrt on the ground that he had paid off the Judgment. If we accept as true, which we must for summary judgment purposes, the fact that Wohlfahrt made most payments after the fifteenth of the month, missed some payments entirely, and had one check returned for insufficient funds, then Daubert's interest and principal calculations are inaccurate, because he assumed that Wohlfahrt made every payment on the fifteenth of every month. The Judgment expressly provides for post-judgment interest at the rate of ten percent per annum. Daubert assumed that each payment was made on the fifteenth of the month and performed his interest calculations accordingly. However, if most payments were not made on the fifteenth of the month, as Bank One's evidence indicates, then Daubert's calculations understate the amount of accrued interest, casting doubt on his conclusion that Wohlfahrt paid off the Judgment. As a result of this discrepancy, Wohlfahrt's summary judgment evidence does not conclusively prove that he paid off the Judgment and that judgment should be granted for him as a matter of law.

Nor is summary judgment appropriate for Bank One. Although the summary judgment evidence does not conclusively prove that Wohlfahrt paid off the Judgment, it also does not conclusively prove the opposite—that Wohlfahrt failed to pay off the Judgment, as Bank One contends. As already discussed, Bank One's sum-

---

**7.** The precise payment dates as set forth in Bank One's spreadsheet are as follows: September 15, 1989; October 17, 1989; November 15, 1989; December 19, 1989; January 17, 1990; February 16, 1990; March 15, 1990; April 17, 1990; May 16, 1990; July 17, 1990; August 16, 1990; September 20, 1990; October 12, 1990; November 15, 1990; December 15, 1990; January 17, 1991; February 19, 1991; March 26, 1991; April 18, 1991; May 21, 1991; July 8, 1991; August 26, 1991; October 9, 1991; December 3, 1991; December 11, 1991; January 7, 1992; February 24, 1992; March 19, 1992; April 13, 1992; May 4, 1992; May 15, 1992; June 17, 1992; July 20, 1992; August 19, 1992; September 21, 1992; October 27, 1992; December 2, 1992; December 11, 1992; February 18, 1993; March 17, 1993; April 22, 1993; May 24, 1993; June 21, 1993; July 26, 1993; September 24, 1993; November 29, 1993; and January 10, 1994.

**8.** According to Bank One's records, check number 3466, dated November 8, 1991, was returned for insufficient funds.

mary judgment evidence is premised upon the incorrect assumption that Wohlfahrt owed an additional $10,007.11 pursuant to the Settlement Agreement. As we similarly have determined with respect to Daubert's spreadsheet, Bank One's incorrect assumption in its spreadsheet also skews the principal and interest calculations, meaning Bank One failed to prove that Wohlfahrt still owes money on the Judgment as a matter of law.[9] Rather, a genuine issue of material fact exists concerning whether Wohlfahrt has paid off the Judgment. As such, neither party is entitled to summary judgment on the issue of payment.[10]

Given our holding that the trial court improperly granted partial summary judgment to Wohlfahrt on the ground that he had paid off the Judgment, we reverse the jury's finding with respect to Wohlfahrt's wrongful garnishment counterclaim because the basis for that claim rests in part on the underlying issue of payment, which we have held Wohlfahrt did not conclusively establish on summary judgment. We therefore reverse the final judgment awarding Wohlfahrt $3,878.44 on his wrongful garnishment counterclaim and remand the cause for further proceedings.

### Conclusion

We hold that a genuine issue of material fact exists as to whether Wohlfahrt has paid off the Judgment. We therefore re-

verse the judgment of the trial court and remand the cause for further proceedings.

9. We note that Bank One provided, as part of its summary judgment evidence before the trial court, a second spreadsheet omitting the $10,007.11 in attorney's fees and still concluding that Wohlfahrt owed money on the Judgment as of January 10, 1994. Daubert's affidavit, however, states that at least four payments made by Wohlfahrt, which are reflected in his bank statements as check numbers 2313, 2414, 2428, and 2443, are not credited on either of Bank One's spreadsheets. Viewing this evidence in a light favorable to Wohlfahrt, even taking into consider-

ation Bank One's additional spreadsheet, a fact issue remains regarding whether Wohlfahrt has paid off the Judgment.

10. Bank One asks that we reverse the trial court's order allowing Wohlfahrt to withdraw from the registry of the court both the $37,000 his wife had deposited, as well as the garnished funds. Given our disposition of the cross-motions for summary judgment, we hold that this issue is better left for the trial court's determination.