Opinion issued April 9, 2009

 







In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00359-CV






AMEGY BANK NATIONAL ASSOCIATION F/K/A SOUTHWEST BANK
OF TEXAS, N.A., Appellant


V.


SOUTHERN CRUSHED CONCRETE, INC., Appellee






On Appeal from the 80th District Court

Harris County, Texas

Trial Court Cause No. 2003-23215A






MEMORANDUM OPINION

 This is an appeal from a postjudgment garnishment proceeding resolved by
cross-motions for traditional summary judgment. Appellant, Amegy Bank, N.A.,
f/k/a Southwest Bank of Texas, N.A. (Amegy), garnishee, challenges the summary
judgment rendered in favor of the garnishor, appellee, Southern Crushed Concrete,
Inc. (Southern), for $99,805.03, plus interest and costs. Amegy presents two sets of
issues. In the first set of four issues, Amegy argues that it was entitled to exercise its
right of setoff, despite having been served with Southern's writ of garnishment. The
second set of three issues challenges the damages awarded to Southern, evidentiary
rulings, and the trial court's refusal to render summary judgment in favor of Amegy. 
We affirm. 

Facts and Procedural History


 Southern sued Republic Concrete, LP (Republic) and Needham Road, LLC
(Needham Road) in an underlying case resolved by those parties by an agreed
judgment in October 2003. Pursuant to the agreed judgment, Southern recovered
$192,131.38 from both judgment debtors, Republic and Needham Road, jointly and
severally. (1) 

A. Southern Sought Writ of Garnishment Against Amegy

 On December 11, 2003, Southern filed an application for a writ of garnishment
against Amegy, supported by the affidavit of Southern's credit manager. Southern
asserted that Amegy either had property of, or was indebted to, Republic, which had
no property within Texas that was subject to execution and sufficient to satisfy the
$192,131.38 judgment. See Tex. R. Civ. P. 661 (form of writ). Southern's
application specified that Republic had "at least one account" with Amegy and
provided the number of that account. 

 Southern later learned that Republic had several financial agreements with
Amegy. These included at least one standard banking account owned by Republic
and four promissory notes secured by certificates of title to Republic's trucks,
machinery, and equipment. Amegy's business transactions with Republic also
included a factoring agreement established in early 2002. This agreement constituted
an "account-purchase transaction" by which Amegy advanced funds to Republic in
exchange for some, but not all, of Republic's accounts receivable at a discount. (2) 
Payments on factored accounts were made directly to Amegy, which returned a
percentage credit to Republic, as provided by the agreement. Amegy tracked
transactions subject to the factoring agreement through several reports, including a
"reserve account report," which "account[ed] for the balance owing to and from
[Republic] as derived from all debts and credits made in connection with the
[factoring] agreement." It is undisputed that the reserve account balance included
both net proceeds from factored invoices and gross proceeds from invoices that were
not subject to the factoring agreement, and that Republic's customers made payments
for both types of invoices to a lock box maintained by Amegy. 

 Amegy referred to the "reserve balance" as the amount held in the "Reserve
Fund" that Amegy owed Republic on any given day. As with all of its factored
accounts, Amegy carried this credit on its balance sheet as a liability. On December
24, 2003, the reserve fund balance in Republic's favor was $24,497.66. On January
20, 2004, the reserve fund balance was $99,805.03. 

B. Amegy Served with Writ

 The trial court issued the writ of garnishment against Amegy on December 22,
2003. The writ referred to the judgment in the underlying case and
"COMMANDED" Amegy, as garnishee, to file a sworn, written answer by a specific
answer date and to state in that answer, [1] "what, if anything, you are indebted to
[Republic] and were, when this Writ was served" and [2] what "effects if any, of
[Republic] you had in your possession, and had when this writ was served." The writ
further specified, "YOU ARE FURTHER COMMANDED not to pay [Republic] or
to deliver to [Republic] any effects pending further order of this court." (Italicized
emphasis added). (3) 

C. Amegy's Answer

 Service on Amegy on December 24, 2003 made Amegy's answer due by
January 20, 2004. See id. Amegy filed a verified original answer on January 6, 2004 (4)
and an amended verified answer 14 days later, on January 20, 2004. The amended
answer recites the following as to Republic: 

 1. Amegy was indebted to Republic on the date of service,
December 24, 2003, in the amount of $101,804.51; (5)


 2. Amegy was not indebted to Republic on the answer date, January
20, 2004 because


 3. Amegy had a priority security interest and lien that controlled
over any claim that Southern might assert, and


 4. At the time of service, Republic's indebtedness to Amegy
exceeded Republic's funds on deposit; 


 5. Accordingly Amegy exercised its right of setoff;


 6. Amegy had no "effects" of Republic in Amegy's possession on
either the date of service or the answer date, and no "effects" of
Republic had come into Amegy's possession between those dates.


In addition to asserting several affirmative defenses, Amegy sought to be discharged
from any liability to Southern and to recover attorney's fees and costs.


D. Southern's Traverse and Opposing Contentions; Amegy's Responses

 Southern filed its "traverse," or challenge, to Amegy's answer, along with a
controverting affidavit and counterclaims that challenged the statements in Amegy's
answer. See Tex. R. Civ. P. 673. Southern later amended its challenge after
discovering the factoring-agreement account between Republic and Amegy. Among
several contentions, Southern emphasized that Amegy had violated specific
requirements of the writ, including not respecting the resulting freeze of assets and
funds subject to the writ. Southern also disputed the amount of Republic debt
claimed by Amegy and whether Republic was in default. Finally, Southern
specifically challenged the $101,804.51 stated in Amegy's answer as due and owing
to Republic on December 24, 2003, the date of service. Southern challenged that
amount on the grounds that it did not include funds due to Republic under the
factoring agreement. Amegy had preserved these funds in its records as the Reserve
Account Balance, or the "net proceeds" due to Republic after applying all debits and
credits under the factoring agreement. 

 Amegy's response relied on default, acceleration, and setoff provisions of its
accounts with Republic. 

E. Summary Judgment Resolution

 Amegy and Southern proceeded at that point by cross-motions for traditional
summary judgment. See Tex. R. Civ. P. 166a(c). After a series of responses, replies,
and rejoinders, the trial court initially denied relief. The parties then filed a joint
motion urging the trial court to render judgment as a matter of law, on the grounds
that, "there are no fact issues requiring resolution by the Court," and that "resolution
of the case depends only upon the Court's application of the appropriate law" to the
facts of the case. The summary judgment rendered in Southern's favor on March 2,
2007, awarded Southern $99,805.03, which was the amount in the reserve account on
January 20, 2004, when Amegy's answer was due. (6)

Standard of Review


 We review summary judgments de novo. Valence Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005). Like the trial court, we must indulge every
reasonable inference in favor of the nonmovant, take all evidence favorable to the
nonmovant as true, and resolve any doubts in favor of the nonmovant. Id. We review
the evidence presented by the summary judgment record in the light most favorable
to the party against whom the summary judgment was rendered, crediting evidence
favorable to that party if reasonable jurors could, and disregarding contrary evidence
unless reasonable jurors could not. See City of Keller v. Wilson, 168 S.W.3d 802, 827
(Tex. 2005). A party who moves for traditional summary judgment based on rule
166a(c), as here, must establish that no genuine issue of material fact exists and that
judgment should be rendered in favor of the movant as a matter of law. Tex. R. Civ.
P. 166a(c); KPMG Peat Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d
746, 748 (Tex. 1999). 

 When, as here, both parties file motions for summary judgment, and the trial
court grants one motion and denies the other, we determine all presented questions
and may render a different judgment if appropriate. SAS Institute, Inc., 167 S.W.3d
at 841; CU Lloyd's v. Feldman, 977 S.W.2d 568, 569 (Tex. 1998); Bank One, N.A.
v. Wohlfahrt, 193 S.W.3d 190, 193 (Tex. App.--Houston [1st Dist.] 2006, no pet.);
Rowley, 976 S.W.2d at 718. Also as here, when a summary judgment does not
specify the grounds on which it was granted, the appealing party must demonstrate
on appeal that none of the movant's proposed grounds is sufficient to support the
judgment. Star Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995). 
Conversely, we will affirm the judgment if any one of the theories advanced in the
motion is meritorious. Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 157
(Tex. 2004). 

Discussion 


 In its first four issues, Amegy argues that summary judgment should have been
rendered in its favor because Amegy complied fully with its duties under the writ of
garnishment issued by the trial court. Specifically, Amegy contends that it lawfully
exercised its right of setoff under its accounts with Republic, that the writ did not
reach any assets encompassed by Amegy's factoring relationship with Republic, that
Republic's "contingent" interests in assets were not captured by the writ, and that any
assets of Republic that came into Amegy's possession after its answer date were
likewise not captured by the writ . 

 Nature of Garnishment Proceedings


 Garnishment is a statutory remedy by which the property or money of a debtor,
held by a third party garnishee, is applied to the payment of a debt that arises from a
final judgment against the debtor. See Bank One, Tex., N.A. v. Sunbelt Sav., F.S.B.,
824 S.W.2d 557, 558 (Tex. 1992); Beggs v. Fite, 106 S.W.2d 1039, 1042 (Tex. 1937);
Wohlfahrt, 193 S.W.3d at 193; HTS Servs, Inc. v. Hallwood Realty Partners, L.P.,
190 S.W.3d 108, 112 (Tex. App.--Houston [1st Dist.] 2005, no pet.); Jamison v.
Nat'l Loan Investors, L.P., 4 S.W.3d 465, 468 (Tex. App.--Houston [1st Dist.] 1999,
pet. denied); see also Tex. Civ. Prac. & Rem. Code Ann. §§ 63.001-.007 (Vernon
2008); Tex. R. Civ. P. 657-679 (governing statute and rules). The garnishment
proceeding focuses on whether the garnishee is indebted to, or has in its possession,
effects that belong to the debtor. HTS Servs, Inc., 190 S.W.3d at 112; Rowley v. Lake
Area Nat'l Bank, 976 S.W.2d 715, 718 (Tex. App.--Houston [1st Dist.] 1998, pet.
denied).

Service of the Writ on Amegy


 The trial court issued the writ of garnishment in response to Southern's
application, in which Southern (1) showed that it had recovered a valid, subsisting
judgment in the underlying case (7) and (2) provided an affidavit stating that, within the
knowledge of Southern's credit manager, Republic did not possess enough Texas
property to satisfy the judgment. See Tex. Civ. Prac. & Rem. Code Ann. § 63.001;
Wohlfahrt, 193 S.W.3d at 194 (citing statute); Jamison, 4 S.W.3d at 468.

 Amegy does not contest Southern's entitlement to the writ, (8)
 but challenges
what Southern contends were Amegy's duties upon service of the writ. Amegy
essentially contends that the writ required no action by Amegy regarding Republic
or Southern, and that Amegy properly relied on its agreements with Republic, which
had priority over any rights of Southern under the writ of garnishment. 

Consequences of Service of Writ: Freeze of Funds Subject to Writ


 Section 63.003 of the Remedies Code explains the consequences of Southern's
effecting service on Amegy, as follows:

 (a) After service of a writ of garnishment, the garnishee may not deliver
any effects or pay any debt to the defendant. . . . 


 (b) A payment, delivery, sale, or transfer made in violation of
Subsection (a) is void as to the amount of the debt, effects, shares, or
interest necessary to satisfy the plaintiff's demand.


Tex. Civ. Prac. & Rem. Code Ann. § 63.001(a)-(b) (emphasis added). 

 In accordance with this statute, rule 661 of the Rules of Civil Procedure
instructs that the garnishee may not pay any debt to the garnishor's judgment debtor
or deliver any effects to the judgment debtor "pending further order" of the court that
issued the writ. Tex. R. Civ. P. 661 (form of writ); see also Wrigley v. First Nat'l
Security Corp., 104 S.W.3d 259, 264 (Tex. App.--Beaumont 2003, no pet.) ("The
issuance and service of the writ of garnishment fixes the trial court's jurisdiction to
determine whether the garnishee holds funds belonging to the judgment debtor.")
(citing Thompson v. Fulton Bag & Cotton Mills, 286 S.W.2d 411, 414 (Tex. 1956)
(Calvert, J.)). On service of the writ of garnishment, assets of the judgment debtor
in the possession of the garnishee are brought "within the control of the court." See
Tex. Commerce Bank-New Braunfels v. Townsend, 786 S.W.2d 53, 55 (Tex.
App.--Austin 1990, writ denied) (recognizing that funds on deposit were subject to
writ of garnishment and therefore holding that bank not liable for wrongful-dishonor
of check presented by its customer); Wrigley, 104 S.W.3d at 264. 

 Amegy acknowledges these principles, but contends that they do not apply to
this case and contends that its response to the writ of garnishment was proper. We
address each of Amegy's contentions below. 

Right of Setoff and Reserve-Account Balance for the Factoring Agreement

 In its second and fourth issues, Amegy contends that it established its right to
summary judgment as a matter of law because it properly relied on its right of setoff
to indemnify itself for Republic's indebtedness, despite having been served with the
writ of garnishment. In defending having exercised its right of setoff, Amegy claims
that Republic was indebted to Amegy in the amount of $559,103.35 on the date of
service of the writ and in the amount of $320,089.57 on the answer date. 

 "Ancient" law recognizes the principle of setoff, both as a general doctrine and
as a specific right of a banking institution. Bandy v. First State Bank, 835 S.W.2d
609, 618-19 (Tex. 1992) (common-law right of setoff); see Mauriceville Nat'l Bank
v. Zernial, 892 S.W.2d 858, 860 (Tex. 1995) (citing Bandy, 835 S.W.2d at 618)
(contractual right of setoff). Setoff may apply in garnishment cases. See San Felipe
Nat'l Bank v. Caton, 668 S.W.2d 804, 805 (Tex. App.--Houston [14th Dist.] 1984,
no writ); Holt's Sporting Goods Co. v. Am. Nat'l Bank, 400 S.W.2d 943, 945 (Tex.
Civ. App.--Amarillo, 1966, no writ). 

A. Opposing Contentions Regarding Reserve-Account Funds

 The record shows that the parties' summary-judgment contentions, responses,
and replies came to focus exclusively on Republic's factoring agreement with Amegy
and the claims by Southern to the funds that Amegy held in the reserve account for
Republic's benefit pursuant to that agreement. In opposing Southern's summary-judgment claim to the funds in the reserve account, Amegy's single contention was
that Southern's judgment against Republic amounted to a breach of the factoring
agreement by Republic, because Republic had warranted, by that agreement, that
Republic had no outstanding actions against it. Amegy also relied on that single
premise when it terminated the factoring agreement when served with the writ. 

 In response to Amegy's summary-judgment contentions regarding the factoring
agreement, Southern argued that (1) Amegy did not comply with its clear duties upon
service of the writ of garnishment because (2) any rights of Amegy, whether to
declare a default, to accelerate, to setoff, or to declare a breach, were distinct from its
primary and mandatory duty to comply with the writ, and further, (3) by exercising
what it perceived as its legal rights--despite having been served with the writ of
garnishment--Amegy had assumed judicial authority reserved to the trial court, in
violation of the writ. 

 In support of its own motion for summary judgment, Southern presented
several grounds on which it claimed that Amegy's actions with respect to the reserve
account for the factoring agreement had either violated or failed to comply with the
writ of garnishment. Southern's summary-judgment evidence in support of these
contentions established that Amegy continued to credit the reserve account after
service of the writ. It is undisputed that the reserve-account balance represented
credits, if any, due to Republic. Southern also showed that Amegy made deposits to
the reserve account of $122,000.00 on January 7, 2004, and $7,015.69 on January 13,
2004. These were payments deposited with Amegy for nonfactored accounts, which
Republic still owned. Southern also showed that Amegy deposited $33,114.18 into
the reserve account on January 14, 2004. Like the earlier two deposits, this deposit
was made after Amegy was served with the writ of garnishment and before it filed its
amended answer on January 20, 2004. Amegy does not dispute that the $33,114.18
amount was the "net proceeds" due to Republic after applying all debits and credits
for the balances due under Republic's four promissory notes and supporting security
agreements. Amegy also does not dispute that the balance in the reserve account was
$99,805.03 on January 20, 2004, when Amegy filed its amended answer. 

 Further, though the writ of garnishment commanded Amegy "not to pay
[Republic] or to deliver to [Republic] any effects pending further order of [the trial
court]" (emphasis added), Southern's summary-judgment evidence established that
Amegy had nonetheless released funds from the reserve account to Republic. After
service of the writ and before filing its amended answer, Amegy paid $11,019.68 of
"actual reserves" to Republic from the reserve-account balance. After the January 20,
2004 answer date, Amegy continued to pay Republic disbursements from the reserve
account. These amounts were $60,000 on February 10, 2004, $20,872.89 on February
11, 2004, and $2,300.07 on May 12, 2004. Amegy did not seek an order from the
trial court before making these payments, as required by the writ.

B. Trial Court Alone Determines Rights to Reserve-Account Funds


 Settled law recognizes that a garnishee may contest its liability under a writ of
garnishment, given that the garnishee has the same rights it would have if it had been
sued by the debtor instead of the debtor's creditor. Beggs, 106 S.W.2d at 1042;
Wilkens & Lange v. Christian, 223 S.W. 253, 255 (Tex. Civ. App.--Galveston 1919,
writ dism'd w.o.j.). Either the garnishee, through its answer, or the garnishor,
through traverse of that answer, may raise the issue of ownership or title to the
property or funds garnished. See Fulton Bag & Cotton Mills, 286 S.W.2d at 414. 

 However a dispute over ownership or title of the funds arises, jurisdiction to
determine whether the garnishee holds funds or property of the debtor remains vested
in the court that issued the writ of garnishment. Id.; Wrigley, 104 S.W.3d at 264. (9) In
Sunbelt Savings, for example, the Supreme Court of Texas reaffirmed that only the
court issuing the writ of garnishment may decide disputed issues regarding ownership
of funds. 824 S.W.2d at 558. Sunbelt Savings involved funds held by the garnishee
bank on deposit by the judgment debtor into which the judgment creditor alleged the
debtor had commingled personal funds. Id. at 557-58. The supreme court
acknowledged that a garnishee bank may rely on its deposit agreements in
determining to whom it is indebted, id. at 557, and that the scope of a writ of
garnishment is broad enough to impound funds of the debtor to which a third party
may hold title. Id. at 558 (citing Fulton Bag & Cotton Mills, 286 S.W.2d at 414). 
Because only the court issuing the writ had authority to determine ownership,
requiring the garnishee bank to determine a third party's ownership rights to funds
on deposit would "improperly shift[] a judicial responsibility" from the court to the
garnishee. Id.

 Pursuant to well-settled law, service of the writ on the garnishee, here Amegy,
resulted in a freeze of all transfers of nonexempt property in the possession of the
garnishee that either belonged to or was due to the judgment debtor, here Republic. 
See Fulton Bag & Cotton Mills, 286 S.W.2d at 414 ( addressing disputed proceeds
of fire-insurance policy); Beggs, 106 S.W.2d at 1042 (stating that writ of garnishment
impounds alleged money, property, or credits of debtor); see generally, Elaine G.
Carlson, 5 McDonald & Carlson Texas Civil Practice § 31:56 at 661 (2d ed.
1999). (10) In keeping with these principles, the writ prohibits these transfers, Tex. R.
Civ. P. 661, and the Remedies Code renders them void. Tex. Civ. Prac. & Rem.
Code Ann. § 63.001(a)-(b); State v. Mauritz-Wells, 170 S.W.2d 625, 628 (Tex. Civ.
App.--Galveston), aff'd, 175 S.W.2d 238 (Tex. 1943).

 The funds captured, or impounded, by the writ of garnishment are those held
by the garnishee on the date the writ is served and any additional funds deposited
through the date the garnishee is required to answer. Consol. Gasoline Co. v. Jarecki
Mfg. Co., 72 S.W.2d 351, 352 (Tex. Civ. App.--Eastland 1934), opin. adopted, 105
S.W.2d 663 (Tex. 1937); Wrigley 104 S.W.3d at 264; Newsome v. Charter Bank
Colonial, 940 S.W.2d 157, 164 (Tex. App.--Houston [14th Dist.] 1996, writ denied);
see also Gause v. Cone, 11 S.W. 162, 163 (Tex. 1889) ("If the garnishee complies
with the directions of the statute, he can make no payment to the debtor at any time
after the service of the writ, and it will necessarily follow that when he answers he
will be indebted all that he owed when the writ was served, or came to owe any time
afterwards before answer."); Cohen v. Advance Imports, Inc., 597 S.W.2d 449, 452
(Tex. Civ. App.--Dallas 1980, writ ref'd, n.r.e.) (recognizing that garnishee who
delivers property or funds impounded by writ may be liable to garnishor for
conversion).

 The garnishee served with a writ of garnishment acts as a receiver of funds
subject to the writ. See also Intercontinental Terminals, Co. v. Hollywood Marine,
630 S.W.2d 861, 863 (Tex. Civ. App.--Houston [1st Dist.] 1982, writ ref'd n.r.e.)
(noting that garnishee holds funds as receiver or officer of court). Case law describes
the effect that ensues upon service of a writ of garnishment on funds or property in
possession of the garnishee as, alternatively, a "freeze," "capture," "impoundment,"
or "lien." See Beggs, 106 S.W.2d at 1042; Sunbelt Sav. Medley v. Am. Radiator Co.,
66 S.W. 86, 90 (Tex. Civ. App.-Galveston 1901, writ ref'd); Baytown State Bank v.
Nimmons, 904 S.W.2d 902, 906 (Tex. App.--Houston [1st Dist.] 1995, writ denied);
Abdullah, 211 S.W.3d at 942; Elaine G. Carlson, 5 McDonald & Carlson Texas
Civil Practice § 31:56 at 661. Similarly, the garnishee is described as acting in the
capacity of a receiver or as an officer of the court. See Mauritz-Wells, 170 S.W.2d
at 628; Intercontinental Terminals Co., 630 S.W.2d at 863; accord, Townsend, 786
S.W.2d at 55-56 (describing "legal effect" of garnishment as "[bringing] within
control of the court" assets subject to writ).

C. Amegy Violated the Writ by Paying Republic

 Because transfers that violate the freeze or impoundment effected by the writ
are void by statute, Tex. Civ. Prac. & Rem. Code Ann. § 63.001(b), a garnishee
"acts at his peril" if it releases to the judgment debtor funds or assets impounded or
frozen by the writ. See Intercontinental Terminals Co., 630 S.W.2d at 863; see also
Indus. Index. Co. v. Tex. Am. Bank-Riverside, 784 S.W.2d 114, 122 (Tex. App.--Fort
Worth 1990, no writ) (stating that garnishee who releases assets in violation of freeze
on funds captured by writ "acts at his peril"); cf., Tex. Commerce Bank-New
Braunfels v. Townsend, 786 S.W.2d at 55 (holding that garnishee bank not liable for
wrongful dishonor of check presented by customer because funds on deposit had been
captured by writ of garnishment). Texas courts have long recognized the permanency
of the freeze effected by a writ of garnishment by imposing a duty on the garnishee
to hold the garnished property until the court issuing the writ of garnishment has
issued an order that explicitly dissolves the writ. Glassman & Glassman v. Somoza,
694 S.W.2d 174, 178-79 (Tex. App.--Houston [14th Dist.] 1985, no writ) (citing
Cohen, 597 S.W.2d at 452). Eventual dissolution of the writ does not alter the scope
of the garnishee's duty on receipt of the writ. Townsend, 786 S.W.2d at 55-56. 

 Despite the express prohibition against paying Republic without first obtaining
a "further order" of the trial court, Amegy paid $11,019.68 of "actual reserves" to
Republic from the reserve-account balance. This payment occurred after service of
the writ on Amegy on December 20, 2003 and before Amegy filed its amended
answer on January 20, 2004. Amegy did not seek an order from the trial court before
making this payment. (11) 

 The summary-judgment thus record establishes that Amegy violated the writ
of garnishment by paying Republic disbursements from the reserve account for the
factoring agreement without first seeking an order from the trial court, as required by
Tex. R. Civ. P. 661 and by thus assuming judicial authority reserved to the trial court
as a matter of law and by the express prohibitions stated in the writ of garnishment. 
See Tex. Civ. Prac. & Rem. Code Ann. § 63.001(a)-(b); Sunbelt Savings, 824
S.W.2d at 558 (citing Fulton Bag & Cotton Mills, 286 S.W.2d at 414). 

 Having concluded that Amegy violated the writ of garnishment in these
regards, which conclusion supports the summary judgment rendered in favor of
Republic, we need not address Amegy's first issue, which addresses its right of setoff. 
See Joe, 145 S.W.3d at 157 (citing Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623,
626 (Tex. 1996); Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989)). 

 We overrule Amegy's second and fourth issues.

Challenge to Damages


 In its fifth issue, Amegy challenges the legal sufficiency of the summary-judgment evidence to support the damages awarded in the judgment. Amegy argues
that the damage award lacks "substantiation in the summary judgment record." We
disagree.

 In addressing this challenge, we must credit evidence that favors Amegy if
reasonable jurors could, and we must disregard contrary evidence unless reasonable
jurors could not. See City of Keller, 168 S.W.3d at 827. We note, in this regard, that
the parties filed cross-motions for summary judgment as a matter of law and thus
represented to the trial court that there were no disputed issues of fact. Indeed, they
stipulated, in their joint motion urging the trial court to rule on their pending motions
for summary judgment, that "there are no fact issues requiring resolution by the
Court," and that "resolution of the case depends only upon the Court's application of
the appropriate law to the facts of the case." We note further that, in moving for
summary judgment, Southern sought damages represented by the $99,805.033
amount that remained in the reserve balance account on January 20, 2004, when
Amegy timely filed its amended answer. 

 Funds captured or impounded by the writ of garnishment are those held by the
garnishee on the date the writ is served and any additional funds deposited through
the date the garnishee is required to answer. Jarecki Mfg. Co., 72 S.W.2d at 352
Wrigley 104 S.W.3d at 264; Newsome, 940 S.W.2d at 164; see also Gause, 11 S.W.
at 163 (describing garnishee's indebtedness to debtor as "all . . . owed when the writ
was served, or came to owe any time afterwards before answer."). 

 Southern established a $23,497.66 balance in the reserve account on December
24, 2003, when the writ was served. See Gause, 11 S.W. at 163. It is undisputed that
Amegy deposited $33,114.18.18 into the reserve account on January 14, 2004, and
that $99,805.03 was the balance in the reserve account on January 20, 2004, "the date
[Amegy was] required to answer." See Jarecki Mfg. Co., 72 S.W.2d at 352; Gause,
11 S.W. at 163; Newsome, 940 S.W.2d at 164. These deposits are certain and readily
ascertainable from Amegy's records. See Waples-Platter Grocery Co. v. Tex. Pacific
Ry. Co., 68 S.W. 265, 266 (Tex. 1902); Alexander v. Berkman, 3 S.W.2d 864, 867
(Tex. Civ. App.--Waco 1927, writ ref'd). Likewise, Southern's summary-judgment
filings increasingly focused on the $99,805.03 balance on January 20, 2004 as
definitive of its damages. Finally, the $99,805.03 amount corresponds exactly to the
amount recited in the judgment as damages due to Southern. 

 We overrule Amegy's fifth issue. 

Judgment Properly Reached Amegy's Indebtedness to Republic


 Amegy's third issue questions whether the writ of garnishment required Amegy
to account for assets of Republic that came into Amegy's possession after its answer
date. Well-settled law recognizes that a writ of garnishment attaches to indebtedness
of the garnishee, in this case Amegy, to the judgment debtor, here Republic, that is
either accrued on the date of service of the writ or accrues between service of the writ
and the date the garnishee's answer is due. See Newsome, 940 S.W.2d at 163
("[W]hole duty of the garnishee is to answer upon the day commanded in the writ
what, if anything, he is then indebted to the defendant and was when the writ
served.") (quoting Jarecki Mfg. Co., 72 S.W.2d at 352-53) (emphasis in original);
Burkitt v. Glean, 371 S.W.2d 412, 414 (Tex. Civ. App.--Houston 1963, writ ref'd
n.r.e.) (stating that garnishment judgment could not be obtained for indebtedness
arising after time for filing answer) (citing Planters' and Mechanics' Bank v. Fleck,
43 S.W. 589, 590 (Tex. Civ. App.--Galveston 1897, writ ref'd)). 

A. Did the Trial Court Consider Post-Answer Date Payments by Amegy?


 Amegy's arguments in support of this issue are grounded in part on Southern's
allegations and summary-judgment evidence showing that Amegy paid funds from
the reserve balance to Republic after service of the writ and after Amegy's answer
date. But, Amegy does not dispute that it made these payments. That the February
10 and 11, 2004 payments, which total $80,872.80, were paid so soon after the
January 20, 2004 answer date is but some evidence that Amegy may have disbursed
a portion of the $98,805.03 that remained in the reserve account on the answer date. 
The judgment awarded Southern as damages the undisputed and readily ascertainable
sum of $99,805.33, which was the balance of the reserve account on the January 20,
2004 answer date. This amount of damages compels that the trial court considered
only that amount and thus complied with the Newsome and Jarecki line of cases. See
Newsome, 940 S.W.2d at 163; Jarecki Mfg. Co., 72 S.W.2d at 352-53; Burkitt, 371
S.W.2d at 414 (citing Planters' and Mechanics' Bank, 43 S.W. at 590).

 Nothing in the summary-judgment record suggests that the trial court relied on
Amegy's post-answer date payments in rendering summary judgment in favor of
Southern. Because it is undisputed that $99,805.33 amount awarded to Southern by
the judgment was the amount that had accrued in the reserve fund on Amegy's answer
date, the trial court had no need to consider those payments. 

B. Whether Writ of Garnishment "Expired" on the Answer Date

 A second premise that underlies Amegy's third issue is its contention that the
writ of garnishment "expired." Amegy does not identify a specific date when the writ
"expired," but its arguments imply contentions that Amegy's duties in response to the
writ ended on January 20, 2004, when Amegy's answer was due. Amegy has
confused the service-date-to-answer-date timeline for assets captured by the writ and
resulting damages, e.g., Newsome, 940 S.W.2d at 163, with duration of the writ. To
the extent that Amegy contends that the writ of garnishment in this case expired on
January 20, 2004 and that Amegy's duties in response to the writ ended on that day,
no authority supports Amegy's interpretation. 

 In accordance with the freeze-pending-dissolution effect that ensues after
service of a writ of garnishment, the supreme court adopted rule 663a in 1978. Rule
663a requires that the copy of the writ served on the judgment debtor prominently
display the following language, to advise of that party's rights to replevy the property
and to regain possession of its property as follows: 

 YOU HAVE A RIGHT TO REGAIN POSSESSION OF THE
PROPERTY BY FILING A REPLEVY BOND. YOU HAVE A RIGHT
TO SEEK TO REGAIN POSSESSION OF THE PROPERTY BY
FILING WITH THE COURT A MOTION TO DISSOLVE THIS
WRIT. (12)


Tex. R. Civ. P. 663a (emphasis in original). Rule 664a, also adopted in 1978, states
the procedural requirements that control vacating, dissolving, or modifying a writ of
garnishment "for any cause, extrinsic or intrinsic[,]" on sworn motion that challenges
the findings stated in the writ. Tex. R. Civ. P. 664a. Either the judgment debtor or
"any intervening party who claims an interest in [the garnished] property or account,"
which necessarily includes the garnishee, may invoke rule 664a. See id. Rules 663a
and 664a would serve no purpose if writs of garnishment "expired" on the garnishee's
answer date. See Glassman & Glassman, 694 S.W.2d at 178-79.

 We overrule Amegy's third issue. 

Challenges to Evidentiary Rulings


 Amegy's sixth issue challenges evidentiary rulings preserved in the summary
judgment that sustained Southern's objections to affidavits of three Amegy
employees, which Amegy offered in support of its motion for summary judgment. 
We review evidentiary rulings for abuse of discretion. Nat'l Lab. & Fire Ins. Co., 15
S.W.3d 525, 527 (Tex. 2000). This standard applies to summary-judgment cases. See
United Blood Servs. v. Longoria, 938 S.W.2d 29, 30-31 (Tex. 1997) (applying
standard to determination whether expert qualified). A ruling that admits or excludes
evidence will not result in reversible error unless the excluded evidence is
determinative of the case. Tex. Dep't of Transp. v. Able, 35 S.W.3d 608, 617 (Tex.
2000); see Tex. R. App. P. 44.1(a)(1). No reversible error occurred here. 

 The trial court's ruling excluded the affidavits of John Amara, Linda Cruz, both
officers of Amegy, and Michael J. Smith, Amegy's counsel. Amegy's senior vice-president John Amara testified by affidavit concerning the details of Republic's
promissory notes, including terms that defined default, authorized acceleration and
created a right of setoff in Amegy, and explained details regarding receipt of the writ
of garnishment and Amegy's notices of demand to Republic. Vice-president Linda
Cruz testified by affidavit regarding details of the factoring agreement, including the
clauses pertaining to Republic's representations and warranties and the charge-back
and repurchase provisions. Michael J. Smith testified by affidavit regarding
attorney's fees sought in connection with defending the writ of garnishment served
on Amegy.

 As demonstrated by our disposition of Amegy's challenges regarding the writ
of garnishment, on service of the writ of garnishment, Amegy violated the writ by
paying Republic without seeking an order authorizing payment and thereby violated
the writ. Though the affidavits of both officers of Amegy provided business-affidavit
confirmation of Amegy documents offered with their affidavits, excluding the
affidavits resulted in no harm to Amegy because the pertinent documents became part
of the summary-judgment record later in the proceedings. We cannot say, therefore,
that the trial court's error, if any, in excluding Amara's and Cruz's affidavits resulted
in reversible error as to Amegy. See Able, 35 S.W.3d at 617; Tex. R. App. P.
44.1(a)(1). The same holds for the affidavit of Smith, Amegy's counsel, regarding
attorney's fees, because Amegy did not prevail on its claims. See Tex. R. Civ. P. 677
(authorizing recovery of costs for discharged garnishee); Rowley, 976 S.W.2d at 721
(noting that "costs" in rule 677 includes attorney's fees).

 We overrule Amegy's sixth issue.

 Summary Judgment for Amegy Properly Denied


 Amegy's seventh issue challenges denial of its own motion for summary
judgment. As demonstrated by our disposition of Amegy's issues, the trial court
properly rendered summary judgment in favor of Southern and, therefore, properly
denied Amegy's motion for summary judgment. 

 We overrule Amegy's seventh issue.

Conclusion


 We affirm the judgment of the trial court. 



 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.
1. This appeal concerns only Republic Concrete, LP as judgment debtor. 
2. See Tex. Fin. Code Ann. § 306.103(a)-(b) (Vernon 2006) (establishing that "account
purchase transaction" is not a "transaction for the use, forbearance, or detention of
money," and that discount is not "interest"); see also id. § 301.002(4) (defining
"interest" for purposes of usury statute as "compensation for the use, forbearance, or
detention of money." The term does not include time-price differential, "regardless
of how it is denominated"; compensation or other amounts that are determined or
stated by the code or other applicable law not to constitute interest or that are
permitted to be contracted for, charged, or received in addition to interest in
connection with an extension of credit.).
3. The writ also notified Republic of the garnishment and of Republic's rights to replevy
and to dissolve the writ. See Tex. R. Civ. P. 663a.
4. The record on appeal does not contain Amegy's original answer.
5. Amegy's answer did not identify the account or accounts from which the $101,804.51
indebtedness was derived.
6. In moving for summary judgment and in its responses and replies to Amegy's filings,
Southern focused its claim for damages on the $99,805.03 balance in the reserve
balance on Amegy's answer date, January 20, 2004. 
7. Unless a supersedeas bond is filed, the judgment is deemed final for purposes of
garnishment from and after the date the judgment is signed. Tex.R. Civ. P. 657. It
is undisputed that Republic did not supersede the judgment in the underlying case. 
8. Because garnishment is an extraordinary remedy, garnishment proceedings "cannot
be sustained unless they are in strict conformity with statutory requirements." Beggs
v. Fite, 106 S.W.2d 1039, 1042 (Tex. 1937); Bank One v. Wohlfahrt, 193 S.W.3d 190,
193) Tex. App.--Houston [1st Dist.] 2006, no pet.) (citing Jemison v. Scarborough,
56 Tex. 358, 361 (1882)).

9. A garnishee who seeks to protect its interests or prevent double recovery may deposit
the funds into the registry and interplead any other claimants. Fulton Bag & Cotton
Mills, 286 S.W.2d at 414; see Tex. R. Civ. P. 43 (Interpleader).
10. Because "the scope of the inquiry in a writ of garnishment is broad enough to
impound funds of the debtor, held by the garnishee, even though title thereto stands
nominally in a third person[,]" the jurisdiction of the court issuing the writ
"[n]ecessarily" extends to any dispute regarding title or ownership of funds held by
garnishee. Thompson v. Fulton Bag & Cotton Mills, 286 S.W.2d 411, 414 (Tex.
1956) (Calvert, J.); see Bank One, Tex., N.A. v. Sunbelt Sav., F.S.B., 824 S.W.2d 557,
558 (Tex. 1992) (citing Fulton Bag & Cotton Mills, 286 S.W.2d at 414); Sunbelt Sav.
Medley v. Am. Radiator Co., 66 S.W. 86, 90 (Tex. Civ. App.--Galveston 1901, writ
ref'd) (describing effect of garnishment as creating "lien"); Baytown State Bank v.
Nimmons, 904 S.W.2d 902, 906 (Tex. App.--Houston [1st Dist.] 1995, writ denied)
(stating that service of writ of garnishment creates lien on property of judgment debtor
and thus impounds funds in hands of garnishee bank); Abdullah v. State, 211 S.W.3d
938, 942 (Tex. App.--Texarkana 2007, no pet.) (citing Beggs, 106 S.W.2d at 1042). 
11. Even after filing its amended answer, Amegy continued to pay Republic
disbursements from the reserve account, as follows: $60,000 on February 10, 2004,
$20,872.89 on February 11, 2004, and $2,300.07 on May 12, 2004. 
12. The writ issued in this case complied with rule 663a.