**Reversed and Rendered Memorandum Opinion filed December 19, 2024**



In The

# Fifteenth Court of Appeals

### NO. 15-24-00029-CV

## EX PARTE THE CITY OF IRVING TEXAS

**On Appeal from the 192nd District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-10-11029**

## MEMORANDUM OPINION

The Texas Comptroller of Public Accounts appeals the trial court's denial of his plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a). In the underlying suit, the City of Irving filed a "petition for supplemental relief," purporting to enforce a final judgment signed in 2011 in an action brought under the Expedited Declaratory Judgment Act (EDJA). *See* Tex. Gov't Code §§ 1205.001-.152. Because we conclude that the trial court lacks plenary jurisdiction to grant the relief requested by the City, we reverse the trial court's order and render judgment, dismissing the City's petition for want of jurisdiction.

# BACKGROUND

*The City's 2010 EDJA Action*

In 2010, the City of Irving filed suit under the EDJA, seeking declarations as to the validity of a series of municipal bonds.[1] The City planned to issue the bonds to fund the construction of an entertainment center and hotel. As described in its original petition, the project would be located "immediately adjacent to the City's new convention center" and include a boutique hotel with 12 luxury suites (the "EC Hotel"), a performance hall, performance stages, a pedestrian walkway, open-air plazas, restaurants, and parking facilities (collectively, the "EC Hotel Project"). The City planned to secure payment of the bonds, in part, with pledges of state taxes that the City anticipated receiving as rebates under Section 351.102 of the Texas Tax Code. The City also sought declarations that its proposed pledges of tax rebates were legal and valid.

Under Section 351.102(b) of the Texas Tax Code, a municipality may, under certain circumstances, pledge certain tax revenues derived from a "hotel project" for the payment of bonds Tex. Tax Code § 351.102(b), (e); *see also id.* § 351.001(7) (defining "eligible central municipality"). Specifically, the

---

[1] The EDJA was enacted to "stop 'the age old practice of allowing one disgruntled taxpayer to stop the entire bond issue simply by filing suit.'" *City of Conroe v. San Jacinto River Auth.*, 602 S.W.3d 444, 451 (Tex. 2020) (quoting *Buckholts Indep. Sch. Dist. v. Glaser*, 632 S.W.2d 146, 149 (Tex. 1982)). To this end, the EDJA allows an "issuer" to bring an expedited action to obtain a declaratory judgment "to validate proposed public securities or to resolve" certain disputes relating to public securities. *City of Conroe*, 602 S.W.3d at 451 (quoting *Guadalupe-Blanco River Auth. v. Texas Attorney Gen.*, No. 03-14-00393-CV, 2015 WL 868871, at *4 (Tex. App.—Austin Feb. 25, 2015, pet. denied) (mem. op.) (citing Tex. Gov't Code § 1205.021)). It also allows an issuer to obtain declaratory judgments as to "the legality and validity of each public security authorization relating to the public securities." Tex. Gov't Code § 1205.021(2). "Resolving a controversy through an EDJA action ends that controversy once and for all: a final judgment is binding on all 'interested parties' and is an injunction against future attacks." *City of Conroe*, 602 S.W.3d at 451.

municipality is entitled to receive and may pledge as security "all funds from a [hotel project] that an owner of a project may receive under Section 151.429(h) of [the Tax Code], or Section 2305.5055 [of the Government Code]."[2]  *Id.* § 351.102(c).  To qualify for the rebates, the "hotel project" must be owned by the municipality, or on land owned by the municipality, and located within 1,000 feet of a qualified convention center.  *Id.* § 351.102(b).  A "hotel project" includes "the hotel and any facilities ancillary to the hotel, including convention center entertainment-related facilities, restaurants, shops, and parking facilities within 1,000 feet of the hotel or convention center facility."[3]  *Id.*; *see* 34 Tex. Admin. Code § 3.12(a)(1)(A) (Tex. Comptroller of Pub. Accts., Hotel Projects, Project Financing Zones, and Qualified Hotel Project) (defining "[c]onvention center entertainment-related facilities"), (E) (defining "[f]acility ancillary to the hotel"), (J) (defining "[s]hop").  If a particular facility or business is not "ancillary to the hotel," then the state taxes collected by that facility or business will not be included in the rebate program.  *See* Tex. Tax Code § 351.102(b).  In its 2010 EDJA action, the City took the position that the EC Hotel Project was a qualified "hotel project" and that the City was entitled to rebates on the project.

The City's EDJA action was opposed by the Texas Attorney General.

---

[2] In general, these statutes authorize a rebate of certain taxes generated by a "qualified hotel project."  Under Section 151.429(h) of the Tax Code, the owner of a "qualified hotel project" shall receive a rebate of a hundred percent of certain taxes, including sales and use taxes and hotel occupancy taxes, paid or collected by the project and businesses during the first ten years in which the project is open for occupancy.  Tex. Tax Code § 151.429(h).  Similarly, under Section 2303.5055 of the Government Code, a governmental body may agree to rebate, refund, or pay "eligible taxable proceeds" to the owner of a qualified hotel project at which the eligible tax proceeds were generated, for a period not to exceed ten years.  Tex. Gov't Code § 2303.5055(a), (e).

[3] Effective September 1, 2019, the Legislature amended Section 351.102 of the Tax Code and replaced the term "shops" with the term "retail establishments."  *See* Act of May 23, 2019, 86th Leg., R.S., ch. 952, § 2, 2019 Tex. Gen. Laws 2744, 2745.  Although not directly relevant to the jurisdictional issue presented, the parties agree that the prior version governs this dispute.

Following a lengthy procedural history, which we need not recite here, the suit was resolved in 2011 by an agreed final judgment. [4] In general, the final judgment determined and declared that the "Proposed Public Securities," i.e., the proposed municipal bonds, were valid and lawful and that, as provided by Section 351.102, the City was entitled to receive certain state tax rebates "for use as a portion of the security for the Proposed Public Securities." For reasons not in the record before us, the City never issued the proposed bonds, and the EC Hotel was never built.

*The Comptroller's 2020 Letter Ruling*

In 2019, after the City built another hotel (the "Westin Hotel") and entertainment center (collectively, the "Westin/Toyota Music Factory Project") adjacent to the convention center, the City applied to the Comptroller for rebates for the completed project. In support of its application, the City provided, among other things, documents from the 2010 EDJA action, including the 2011 agreed final judgment. After considering the information provided by the City, in July 2020, the Comptroller issued a final decision on the City's rebate request for the Westin/Toyota Music Factory Project.

In his letter, the Comptroller explained that the final judgment in the 2010 EDJA action involving the EC Hotel Project did not resolve the issue as to whether the current project qualified for tax rebates under Section 351.102. The Comptroller noted, "the judgment is based on a different set of facts, which do not apply to the City's current request for rebates from its hotel project." The Comptroller added that, even if the City could show that the final judgment applies

---

[4] *See City of Irving v. Las Colinas Grp., LP*, No. 05-13-00375-CV, 2013 WL 3974123 (Tex. App.—Dallas Aug. 2, 2013, no pet.) (mem. op.); *Ex parte City of Irving*, 343 S.W.3d 850 (Tex. App.—Dallas 2011, pet. granted, judgm't vacated w.r.m.); *Putnam v. City of Irving*, 331 S.W.3d 869 (Tex. App.—Dallas 2011, pet. denied).

to the current hotel project, it states only that the City is entitled to rebates "as provided for in Tax Code Section 351.102(c)." Accordingly, after applying Section 351.102 and the corresponding administrative rules, the Comptroller concluded that (1) the City was an "eligible central municipality," entitled to the requested rebates for state taxes paid or collected for the Westin Hotel, and (2) 19 of the other 25 businesses in the Westin/Toyota Music Factory Project, including restaurants and parking garages, were considered part of the "hotel project," and therefore the City was also entitled to the requested rebates for state taxes generated from these businesses. Conversely, the Comptroller concluded that six of the 25 businesses did not qualify for rebates. Finally, the Comptroller informed the City that it could appeal the decision by requesting a refund hearing. *See* 34 Tex. Admin. Code § 1.10 (Tex. Comptroller of Pub. Accts., Requesting a Hearing). The City did not request a refund hearing.

*The City's Petition for Supplemental Relief*

In July 2020, the City filed a "petition for supplemental relief" in the 2010 EDJA suit. In its petition, the City alleged that the agreed final judgment "conclusively establishes" that all businesses in the "Project Area" qualify for rebates under Section 351.102. Further, the City alleged that the hotel project as built is fundamentally the same as the hotel project originally proposed and thus is "within the Project Area," as that term is used in the final judgment. Thus, the City asked the trial court to "enforce" the EDJA final judgment by ordering the Comptroller to pay the tax rebates it had denied on the Westin/Toyota Music Factory Project.

In response to the suit, the Comptroller filed a plea to the jurisdiction. The Comptroller argued that, for several reasons, the City's requested relief is outside

5

the scope of the agreed final judgment. In the Comptroller's view, the City's "petition for supplemental relief" is, in effect, an untimely attempt to substantively modify the terms of the final judgment and, as a result, is jurisdictionally barred.

After conducting a non-evidentiary hearing, the trial court denied the Comptroller's plea. This interlocutory appeal followed.

## STANDARD OF REVIEW

Whether a court has jurisdiction is a question of law, *City of Conroe v. San Jacinto River Auth.*, 602 S.W.3d 444, 451 (Tex. 2020), and we review a trial court's ruling on a plea to the jurisdiction de novo, *Houston Belt & Terminal Ry. Co. v. City of Hous.*, 487 S.W.3d 154, 160 (Tex. 2016). In performing this review, we look to the plaintiff's petition to determine whether the facts pleaded affirmatively demonstrate that jurisdiction exists. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). In making this assessment, we construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Id*. In addition, we may consider evidence that the parties have submitted and must do so when necessary to resolve the jurisdictional issue. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554-55 (Tex. 2000). Where, as in this case, the relevant evidence is undisputed, the court resolves the jurisdictional issue as a matter of law. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004) ("[W]hether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is also a question of law.").

## ANALYSIS

On appeal, the Comptroller argues that the trial court erred in denying its plea to the jurisdiction because the trial court lost jurisdiction over the EDJA suit

6

when its plenary power expired in 2011.[5]   When a trial court signs a final judgment, it retains jurisdiction to modify its judgment for 30 days from its signing.  *Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 310 (Tex. 2000).   When an appropriate post-judgment motion—such as a motion for new trial or a motion to modify the judgment—is timely filed, the trial court's plenary jurisdiction may be extended up to an additional 75 days, depending on whether the court acts on the motion.  *Id.* (citing Tex. R. Civ. P. 329b(e)).

"The purpose of limiting a trial court's plenary power over a proceeding is to foreclose the possibility of suit continuing indefinitely even though a final judgment has been obtained."  *Malone v. Hampton*, 182 S.W.3d 465, 470 (Tex. App.—Dallas 2006, no pet.).   Once plenary power has expired, the actions that a trial court may take with respect to its judgment are limited.  *See* Tex. R. Civ. P. 329b(f) ("On expiration of the time within which the trial court has plenary power, a judgment cannot be set aside by the trial court except by bill of review . . . .").  In general, "[j]udicial action taken after the expiration of the court's jurisdiction is a nullity, and any orders signed outside the court's plenary jurisdiction are void." *Malone*, 182 S.W.3d at 468; *see also Electric Reliability Council of Tex., Inc. v. Panda Power Generation Infrastructure Funds, LLC*, 619 S.W.3d 628, 640 (Tex. 2021) (noting that action taken by trial court after expiration plenary power would be void).

---

[5] The Comptroller also asserts that the City's petition implicates the doctrine of sovereign immunity.  Absent a clear and unambiguous waiver by the Legislature, sovereign immunity generally bars suits against the State or its political subdivisions and implicates the trial court's subject-matter jurisdiction.  *City of Conroe*, 602 S.W.3d at 457. As the Texas Supreme Court has explained, however, suits under the EDJA are *in rem* suits and therefore do not subject governments to the "costs and consequences" of improvident government actions and "pose little risk to the public treasury."  *Id.* at 458.  Consequently, suits brought under the EDJA do not implicate immunity.  *Id.*  The Comptroller posits that the City is attempting to bring its claim in the 2010 EDJA action to avoid the jurisdictional barrier posed by sovereign immunity.

Here, because the final judgment in the EDJA action was signed on November 29, 2011, the trial court's plenary jurisdiction expired, at the latest, on March 13, 2012. *See* Tex. R. Civ. P. 329b(e). To avoid this potential jurisdictional barrier, the City asserts that its "petition for supplemental relief" merely seeks to enforce the 2011 final judgment. Specifically, the City argues that the final judgment adjudicated the issue of whether the City's project was a "qualified hotel project" and that because the "hotel project" has now been built, the City is entitled to enforce the agreed final judgment's declaration that it is entitled to "receive the State's sales and use taxes that are collected within the Project Area."

We recognize, as the City asserts, that even after a trial court's plenary jurisdiction has expired, a trial court retains the inherent power to enforce its judgments. *See Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co.*, 540 S.W.3d 577, 581 (Tex. 2018) ("Generally, every court with jurisdiction to render a judgment also has the inherent authority to enforce its judgments."); *see also* Tex. R. Civ. P. 308 ("Court Shall Enforce its Decrees"). A trial court may not, however, issue an order that is inconsistent with the original judgment or that otherwise constitutes "a material change in the substantive adjudicative portions of the judgment" after its plenary power has expired. *Custom Corps., Inc. v. Security Storage, Inc.*, 207 S.W.3d 835, 839 (Tex. App.—Houston [14th Dist.] 2006, no pet.). In addition, post-judgment orders may not require the performance of obligations in addition to "the obligations imposed by the final judgment." *Id.* (quoting *Bank One, N.A. v. Wohlfahrt*, 193 S.W.3d 190, 195 (Tex. App.—Houston [1st Dist.] 2006, no pet.)). "[T]his is particularly true when such orders purport to adjudicate the rights of non-parties." *Id.* Thus, whether the trial court has jurisdiction to grant the relief requested by the City in its "petition for supplemental relief" turns on whether the City is validly seeking to invoke the trial

court's power to enforce the relief granted in the agreed final judgment or, instead, to impermissibly change or expand the terms of the judgment. Resolution of this issue requires us to construe the judgment.

We apply the same rules in construing the language in a judgment as we apply in construing the language in other written documents. *Nueces Cnty. v. San Patricio Cnty.*, 683 S.W.3d 559, 567 (Tex. App.—Corpus Christi-Edinburg 2023, pet. denied); *In re Estate of Renz*, 662 S.W.3d 531, 537 n.4 (Tex. App.—El Paso 2022, pet. denied). We construe the judgment as a whole to harmonize and give effect to the entire judgment. *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003). We begin with the text of the judgment, and if the judgment is unambiguous, we adhere to the literal language used. *Hagen v. Hagen*, 282 S.W.3d 899, 901 (Tex. 2009). Only where a judgment's terms are ambiguous—that is, subject to more than one reasonable interpretation—"do we look to the surrounding circumstances to discern their meaning." *Kourosh Hemyari v. Stephens*, 355 S.W.3d 623, 626 (Tex. 2011).

In relevant part, the agreed final judgment states:

> It is ORDERED, ADJUDGED & DECLARED (a) that the Proposed Public Securities are being issued by the City for the public purposes of development diversification of the economy of the State . . . ; (b) that, notwithstanding any other provisions of the Texas Constitution, and as provided by Section 351.102(c), Texas Tax Code, the City is entitled to receive the State's sales and use taxes that are collected within the Project Area, together with the State's hotel occupancy taxes that are collected from the EC Hotel (collectively, the "State Project Taxes"), annually, *for a period of 10 years after the EC Hotel is open for initial occupancy, for use as a portion of the security for the Proposed Public Securities*.

9

(Emphasis Added).

Based on the judgment's plain language, we conclude that two specific portions of the judgment condition the City's entitlement to receive any rebates for state taxes collected "within the Project Area [and] from the EC Hotel," i.e., the "State Project Taxes." First, the judgment states that the City is entitled to receive the State Project Taxes, "annually, for a period of 10 years after the EC Hotel is open for initial occupancy." In other words, the City would be entitled to the State Project Taxes only when the EC Hotel opens for initial occupancy. Second, the judgment states that the City is entitled to receive the State Project Taxes "for use as a portion of the security for the Proposed Public Securities." That is, the City would only be entitled to the State Project Taxes to the extent it intends to use the taxes as security for the bonds that are the subject of the EDJA suit.

The City's "petition for supplemental relief" seeks to enforce the final judgment's declaration that it is entitled to receive the State Project Taxes free from these two conditions. There is no dispute that the EC Hotel was never built, the Westin Hotel was built instead, and the Proposed Public Securities were never issued. The two conditions have not been and cannot be satisfied, and as a result, the City's "petition for supplemental relief" seeks relief that is beyond the scope of the agreed final judgment.

Even assuming without deciding that the hotel project as built is fundamentally the same as the hotel project originally proposed and therefore is "within the Project Area," as that term is used in the agreed final judgment, we disagree with the City's contention that its petition for supplemental relief constitutes an enforcement action. Instead, the City seeks relief that, if granted, would constitute "a material change in the substantive adjudicative portions" of the

10

final judgment. *See Custom Corps.*, 207 S.W.3d at 839. In other words, in effect, the City seeks to expand or modify the substantive terms of the judgment. *See id.* Because the trial court's plenary jurisdiction to grant such relief has long expired, any action taken by the trial court on the City's petition would be void.[6] *See Electric Reliability Council of Tex.*, 619 S.W.3d at 640. Consequently, we conclude that the trial court erred in denying the Comptroller's plea to the jurisdiction.

## CONCLUSION

We reverse the trial court's order denying the appellant's plea to the jurisdiction and render judgment, dismissing the City's "petition for supplemental relief" for want of jurisdiction.

/s/ Scott K. Field

Scott K. Field
Justice

Panel consists of Chief Justice Brister and Justices Field and Farris

---

[6] In the alternative, the Comptroller argues that "the City's request for relief depends on a construction of the 2011 judgment that assumes the trial court adjudicated matters beyond its jurisdiction in the original [2010] EDJA suit" and that "a court has no authority to enforce a judgment that it lacked jurisdiction to render in the first place." *See City of Conroe*, 602 S.W.3d at 456-57 (concluding that trial court lacked subject-matter jurisdiction to make certain declarations that were outside EDJA's scope). Because we conclude that the City's requested relief exceeds the scope of the agreed final judgment based on its plain language, we need not consider this alternative argument. *See* Tex. R. App. P. 47.1